Ruben and Anita **HERNANDEZ**, Petitioners,

v.

**GULF GROUP LLOYDS**, Respondent.

No. D–3795.

Supreme Court of Texas.

Argued Nov. 30, 1993.

Decided April 28, 1994.

Larry Zinn, Phillip D. Hardberger, San Antonio, for petitioners.

Mary Mishtal, San Antonio, for respondent.

---

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, DOGGETT, CORNYN and GAMMAGE, Justices, join.

■ In this cause, we consider whether an insurer may deny an uninsured/underinsured motorist claim on the basis of a "settlement without consent" exclusion clause absent any showing that the settlement prejudiced the insurer. The trial court rendered judgment in favor of the insureds. The court of appeals reversed, reasoning that the insureds had violated their insurance contract by settling with the underinsured motorist without the insurer's consent. 876 S.W.2d 162. We hold that an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor.

This case was tried on the following stipulated facts. On November 21, 1987, Elizabeth Hernandez was killed when the car in which she was a passenger flipped over. The sole proximate cause of the accident was the negligence of the driver of the car, Charles McCullough, Jr. At the time of the accident, McCullough was nineteen years old and his only asset was a $25,000 liability policy with State Farm Mutual Automobile Insurance Company. Elizabeth Hernandez was covered by her parents' insurance policy with Gulf Group Lloyds. That policy included uninsured/underinsured motorist coverage in the amount of $100,000. The damages suffered by Elizabeth Hernandez and her parents exceeded $125,000.

Six weeks after the accident, the Hernandezes, without the consent of Gulf, entered into a settlement with McCullough for the limits of McCullough's State Farm policy. On March 30, 1990, the Hernandezes sought to recover from Gulf under the underinsured motorist coverage. Gulf denied coverage based upon the Hernandezes' failure to ob-

tain its consent before settling with McCullough.[1]

After a bench trial, the trial court rendered judgment for the Hernandezes in the amount of $100,000 (the amount of the underinsured motorist policy), plus pre-judgment interest, post-judgment interest, and attorney's fees. In its conclusions of law, the trial court stated that Gulf had suffered no material prejudice because of the Hernandezes' failure to comply with the settlement-without-consent exclusion, and that invocation of the exclusion would deprive the Hernandezes of protection required by the Texas Uninsured/Underinsured Motorist Statute, TEX. INS.CODE ANN. art. 5.06–1 (Vernon 1981). The court of appeals disagreed with the latter conclusion, and thus reversed the trial court's judgment and rendered a take-nothing judgment against the Hernandezes. 876 S.W.2d 162.

The Hernandezes do not dispute the validity of settlement-without-consent exclusions. *See Guaranty County Mut. Ins. Co. v. Kline,* 845 S.W.2d 810 (Tex.1992). They argue, however, that such an exclusion is unenforceable absent a showing by the insurer that it has been prejudiced by an insured's failure to obtain consent before settling with an uninsured or underinsured motorist. We agree.

■ Insurance policies are contracts, and as such are subject to rules applicable to contracts generally. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987); *First Texas Prudential Ins. Co. v. Ryan,* 125 Tex. 377, 82 S.W.2d 635, 637 (1935). A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform. *See Jack v. State,* 694 S.W.2d 391, 398–99 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (citing *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex. 1981)).

---

1. The insurance contract between the Hernandezes and Gulf Group Lloyds contained the following settlement-without-consent clause:

This insurance does not apply:

   a) to bodily injury or property damage with respect to which the insured, his legal repre-

sentative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor[.]

In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981); *Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).[2] The less the non-breaching party is deprived of the expected benefit, the less material the breach.

In the context of an underinsured motorist claim, there may be instances when an insured's settlement without the insurer's consent prevents the insurer from receiving the anticipated benefit from the insurance contract; specifically, the settlement may extinguish a valuable subrogation right. *Cf. Liberty Mut. Ins. Co. v. Cruz,* (Tex.1994) (insured's failure to provide notice of suit prejudiced insurer as a matter of law).[3] In other instances, however, the insurer may not be deprived of the contract's expected benefit, because any extinguished subrogation right has no value. In the latter situation—where the insurer is not prejudiced by the settlement—the insured's breach is not material. We conclude, therefore, that an insurer who is not prejudiced by an insured's settlement may not deny coverage under an uninsured/underinsured motorist policy that contains a settlement-without-consent clause.[4]

■ Applying this materiality principle to the facts of this case, we conclude that the Hernandezes' failure to obtain Gulf's consent before settling with McCullough was not a material breach. Gulf stipulated that it knew of no case in which it has refused its consent to settle a claim when an underinsured driver has tendered the full limits of his or her policy. The parties stipulated that McCullough had no assets other than the $25,000 State Farm policy, and that he did not believe his financial situation would change in the foreseeable future; and Gulf further stipulated that it "has not incurred any financial losses ... with regard to its subrogation

**2.** The other factors courts consider in determining the materiality of a breach are: (i) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (ii) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (iii) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (iv) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

**3.** *Cruz* involved an insurance policy provision that required the insured to provide notice of suit. In spite of this provision, the insurer in *Cruz* did not receive notice of suit until 41 days after the entry of a $3.2 million default judgment. The insured's failure to comply with the notice provision prejudiced the insurer by denying its opportunity to answer for the insured and litigate the merits of the suit or to appeal any adverse judgment.

**4.** Most other jurisdictions presented with this issue have likewise imposed a prejudice requirement, primarily on public policy grounds. *See Thompson v. American States Ins. Co.,* 687 F.Supp. 559, 564 (M.D.Ala.1988); *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637, 640 (1992); *Rafferty v. Progressive American Ins.*

*Co.,* 558 So.2d 432, 433 (Fla.App.1990); *Marsh v. Prestige Ins. Group,* 58 Ill.App.3d 894, 16 Ill.Dec. 390, 392, 374 N.E.2d 1268, 1270 (1978); *Kapadia v. Preferred Risk Mut. Ins. Co.,* 418 N.W.2d 848, 852 (Iowa 1988); *MacInnis v. Aetna Life & Casualty Co.,* 403 Mass. 220, 526 N.E.2d 1255, 1257–58 (1988); *Silvers v. Horace Mann Ins. Co.,* 324 N.C. 289, 378 S.E.2d 21, 27 (1989); *Wheeler v. Nationwide Mut. Ins. Co.,* 749 F.Supp. 660, 663 (E.D.Penn.1990). *But see Stevens v. Merchants Mut. Ins. Co.,* 135 N.H. 26, 599 A.2d 490 (1991) (enforcement of settlement-without-consent term did not depend upon showing of prejudice to insurer). *Cf. Newark Ins. Co. v. Ezell,* 520 S.W.2d 318 (Ky.Ct.App.1975) (showing of prejudice required in order for insurer to invoke a "consent to sue" clause as a basis for denying uninsured motorist benefits); *Bazinet v. Concord Gen. Mut. Ins. Co.,* 513 A.2d 279 (Me.1986) (stating that when an insurer's subrogation rights are unaffected by a settlement, courts may not permit settlement-without-consent clauses to defeat the claims of the insured); *Tegtmeyer v. Snellen,* 791 S.W.2d 737, 740 (Mo.App.1990) (insurer who refused to consent to a settlement for the full limits of a tortfeasor's liability policy was not prejudiced and therefore could not escape liability under a settlement-without-consent exclusion); *Thiringer v. American Motor Ins. Co.,* 91 Wash.2d 215, 588 P.2d 191, 193 (1978) (showing of prejudice required in order for insurer to deny personal injury protection coverage on the basis that an insured's settlement failed to comply with a subrogation provision).

rights by the failure of the [Hernandezes] to obtain [its] consent before settling with McCullough and releasing him from all liability." Gulf, therefore, remains in the same position it would have occupied had the Hernandezes complied with the settlement-without-consent clause.[5] Since Gulf has not been prejudiced by the Hernandezes' breach, the breach is not material, and Gulf therefore is not excused from its obligation to perform under the contract.

Because the stipulated facts establish as a matter of law that Gulf was not prejudiced by the Hernandezes' settlement with McCullough, Gulf may not escape liability by invoking the settlement-without-consent exclusion. We therefore reverse the judgment of the court of appeals and affirm the trial court's judgment in favor of the Hernandezes.

ENOCH, Justice, dissenting.

If this were a breach of contract case, I would agree that for Gulf Group to avoid its duty to cover the Hernandezes' underinsured claim, it would have to show a loss of "expected benefit."

However, this case is not about a breach of contract. This case is about coverage. The insuring agreement states:

This insurance *does not apply*:

a) to bodily injury or property damage with respect to which the insured, ..., without written consent of the company, make[s] any settlement with any person ... who may be legally liable therefore....

The Hernandezes raise four points of error in this Court. All four points, though, ask one question, may an insurance company that is not materially prejudiced by a settlement deny coverage under an uninsured/underinsured motorist policy that contains a consent to settle exclusion. In support of their position, the Hernandezes argue that the exclusion is inconsistent with the purposes of the Texas Uninsured or Underinsured Motorist

statute, TEX.INS.CODE ANN. art. 5.06–1 (Vernon 1981).

The Court is correct in recognizing that the other states that have addressed this issue, and that have "imposed a prejudice requirement," have done so "primarily on public policy grounds." *See* 875 S.W.2d 693, n. 4. And in this context, this Court has already addressed the Hernandezes' argument. *Guaranty County Mutual Ins. Co. v. Kline*, 845 S.W.2d 810 (Tex.1992). *Guaranty* held that "the settlement clause is clearly consistent with, and indeed advances the purpose of article 5.06–1(6)." *Id.* at 811. Implicit in the acceptance of this consent to settle exclusion is the idea that the insurance company might not be prejudiced and that an inequitable result might occur. *See Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278 (Tex.1972). While *Cutaia* involved a notice of claim provision, rather than a settlement clause, the issue was whether to impose a prejudice requirement. In refusing to impose a prejudice requirement, this Court stated that even though an injustice might occur by disallowing an otherwise valid claim, this Court should not overreach its boundaries and imply new standards into insurance contracts. *Id.* at 281.

This Court has consistently upheld consent to settle exclusions. *E.g., Kline*, 845 S.W.2d at 811; *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663, 665 (Tex.1977); *Dairyland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 159 (Tex.1973); *see also, Huttleston v. Beacon Nat'l Ins. Co.*, 822 S.W.2d 741, 742 (Tex.App.—Fort Worth 1992, writ denied). Among these cases, there were undoubtedly insurance companies that were not prejudiced, but the point of the consent to settle exclusion is to not usurp the insurance companies' subrogation rights.

In this case, when an insured person asks for consent to settle, Gulf conducts a thorough financial check of the motorist to ensure that he cannot satisfy a judgment. It cannot be gainsaid that most insureds do not have the resources to conduct such an inves-

---

5. Gulf does not suggest that it has been prejudiced by the passage of time between the Hernandezes' settlement and the filing of their claim. To the extent that such a delay might, in other circumstances, increase an insurer's difficulties

in recovery, an insured may face a claim that the delay itself caused prejudice. Thus, contrary to the suggestion of the dissenting opinion, an insured's interests are not served by postponing the filing of the claim until years after a settlement.

tigation. Irrespective of the stipulations,[1] what the Hernandezes are asking this Court to do is allow all insureds to settle as quickly as possible with the person at fault, then, years later (two years in this case) make a claim against their underinsured motorists policy. Without the claim, the insurance company is unaware that it needs to investigate the negligent person and determine whether or not he is judgment proof. Concomitantly, how will the insurance company prove prejudice two years after the accident, not only faced with trying to locate the negligent party, but without the aid of civil process to assist in discovering the tortfeasor's assets? This approach is not the way in which the uninsured/underinsured motorist provision was designed to work.

For the above reasons, I would affirm the judgment of the court of appeals. I therefore dissent.

---

1. The court should additionally be wary of taking a position founded upon public policy considerations, which thus affects all parties to insuring agreements, in a case literally conceded away by one of the litigants.