In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-372 CV


____________________



TRANS-PECOS RESOURCES, INC., Appellant



V.



RANGE PRODUCTION I, L.P. and MARK SMITH, Appellees






On Appeal from the 159th District Court


Angelina County, Texas


Trial Cause No. 33,072-00-05






OPINION





 Range Production I, L.P. filed suit against Trans-Pecos Resources, Inc. to establish
its ownership interest in an oil and gas lease. Trans-Pecos filed a claim against Range
requesting damages and the imposition of a constructive trust on the lease and well. The
trial court granted Range's motion for summary judgment. Trans-Pecos filed this appeal. 


Background Facts


 The dispute between Trans-Pecos and Range concerns an oil and gas lease originally
conveyed by the Flournoy family to M.E. Operating and Services, Inc. ("M.E."). The
Flournoy family leased the mineral rights on a tract of land (known as the Manning
Prospect or Johnson #1 well) to M.E. The lease expired in 2000. During the term of the
lease, Mark Smith, the president of M.E., and Donald Orr, president of Trans-Pecos,
signed a Letter Agreement dated September 16, 1999, that related to the oil and gas lease. 
For purposes of this suit, the Letter Agreement contains two significant dates: Trans-Pecos
agreed to pay M. E. Operating $18,000 on or before October 31, 1999; and Trans-Pecos
agreed to commence operations on the well on or before May 1, 2000. Trans-Pecos never
paid M.E. the $18,000 and did not begin operations on the well by May 1, 2000, or any
other date. M.E. assigned the lease to Range on April 24, 2000. This dispute between
Range and Trans-Pecos involves the interpretation to be given the Letter Agreement
between M.E. and Trans-Pecos. 

The Pleadings


 Range moved for summary judgment under Texas Rules of Civil Procedure 166a(c)
and (i). See Tex. R. Civ. P. 166a(c), (i). The motion is based on an August 2000 lease
from the Flournoy family to Range and on Range's claim that Trans-Pecos breached the
Letter Agreement, thereby excusing M.E.'s performance. Range contends the failure by
Trans-Pecos to pay the $18,000 by the required date means Trans-Pecos had no more
rights under the Agreement. Range also submits there is no evidence to support Trans-Pecos's claims. 

 Trans-Pecos's response asserts that Range cannot be a bona fide purchaser of the
lease, and that the assignment of the lease from M.E. to Range is void because it was
procured through fraud and tortious interference with contract. The trial court ruled that
Range owns the lease, Johnson #1 well, and equipment. The court also rendered a take-nothing judgment on Trans-Pecos's claims. 

Analysis


 In six issues, Trans-Pecos argues the trial court erred in granting the summary
judgment. We start with issue four, since it is the core issue of the case. Trans-Pecos
argues the Letter Agreement did not contain a condition precedent that required forfeiture
of its rights under the contract. 

 The construction of an unambiguous contract is a question of law for the court. See
MCI Telecomms. Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999). The
terms must be given their plain, ordinary, and generally accepted meaning unless the
contract shows that particular definitions are used to replace ordinary meaning. See
Western Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557 (1953). 
In an appellate review, the court considers the entire writing and gives effect to all
provisions of the contract so that none will be rendered meaningless. Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).

 Though the parties advance conflicting interpretations, we do not find the contract
ambiguous. The September 16, 1999, Letter Agreement between M.E. and Trans-Pecos
provides, in part, as follows: 

 2. On or before May 1, 2000, [Trans-Pecos] or [its] assigns agrees to
commence or cause to be commenced operations for the re-completion of a
well known as the Johnson #1 in search of oil and/or gas at a location of
1505' FNL and 1479' FEL of the W.T. Carter & Bros. Survey, A-956,
Angelina Co., Texas and will thereafter prosecute or cause to be prosecuted
the re-completion of said well in a zone or zones until commercial
production has been obtained.

 . . . .

 6. On or before October 31, 1999, [Trans-Pecos] agrees to pay [M. E.] the
sum of $18,000 for the Manning Prospect and Johnson #1 wellbore and any
personal property used in connection therewith and for the acreage [M. E.]
currently has leased covering the prospect. Upon receipt of payment [M. E.]
will execute a P-4 making [Trans-Pecos] or [its] assigns the operator at the
Railroad Commission of Texas. 

 

 7. Upon receipt of the payment of the above $18,000, [M.E.] will assign to [Trans-Pecos] all of their right, title and interest in all the leases and
acreage under the prospect, SAVE AND EXCEPT a 5% working interest after payout and
any overriding royalty interest reserved between the royalty and 77% net revenue . . . .


(emphasis omitted). Trans-Pecos argues that, regardless of the October 31, 1999, payment
deadline, it actually had until May 1, 2000, to begin operations and pay the $18,000. The
contract terms do not bear out Trans-Pecos's interpretation. The contract expressly
provides that Trans-Pecos was to pay M. E. $18,000 by October 31, 1999, and M.E. was
then to assign the lease to Trans-Pecos. 

 Trans-Pecos argues that the contract does not include a "time is of the essence"
clause. Generally, time is not of the essence in a contract unless the contract so specifies. 
See HECI Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 633 (Tex. App.--Austin
1992, writ denied). A stated date of performance does not, by itself, mean time is of the
essence. See Shaw v. Kennedy, Ltd., 879 S.W.2d 240, 246 (Tex. App.--Amarillo 1994,
no writ). The intent to make time of the essence must be clearly manifested from a
consideration of the contract as a whole. See Municipal Admin. Servs., Inc. v. City of
Beaumont, 969 S.W.2d 31, 36 (Tex. App.--Texarkana 1998, no pet.). Here there is a
clear manifestation in the contract, taken as a whole, that time was of the essence. The
contract provides that the Agreement expires if the timetable terms are not met. The terms
of the contract, setting out the grounds by which the contract would expire and setting out
a requirement of payment by a certain date, coupled with the dependent promise by M.E.
to assign the lease to Trans-Pecos, make clear that the parties intended the money to be
paid by October 31, 1999, in order to keep the assignment provision in the Letter
Agreement in effect. 

 A party breaches a contract when it neglects or refuses to perform a contractual
obligation. See Townewest Homeowners Ass'n, Inc. v. Warner Communication, Inc., 826
S.W.2d 638, 640 (Tex. App.--Houston [14th Dist.] 1992, no writ). If the breach is
material, the other party is excused from further performance of the contract. See
Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994). Texas courts apply
the considerations set forth in Restatement (Second) of Contracts § 241(a) (1981) in
determining whether the breach was material. Hernandez, 875 S.W.2d at 693. Among
the factors to be considered are (a) the extent to which the non-breaching party will be
deprived of the benefit that it could have reasonably anticipated from full performance, and
(b) the likelihood that the breaching party will cure its breach -- taking into account all the
circumstances including any reasonable assurances. Hernandez, 875 S.W.2d at 693 & n.2. 
M.E. did not receive the $18,000 payment and was deprived of the benefit it could have
reasonably anticipated from full performance. Furthermore, there is no indication Trans-Pecos would have cured the breach. M.E. assigned the lease to Range on April 24, 2000,
approximately a week prior to the May 1, 2000, deadline for commencement of operations
on the well. The record shows that Trans-Pecos did not attempt to contact M.E. until late
April 2000, shortly before the May 1 deadline, and did not learn of the assignment of the
lease to Range until May 12, 2000. Under these undisputed facts, Trans Pecos did not
cure -- or even seem likely to cure -- its breach. See id. at 693 n.2. We hold the failure
to pay the $18,000 by October 31, 1999, was a material breach of the contract that caused
the expiration of the Letter Agreement and discharged M.E. from any further
performance. See id. at 692. We overrule issue four. 

 In its first issue, Trans-Pecos argues that Range maintained inconsistent positions
in its motion for summary judgment. Range pleaded various alternative theories in its
motion and supplemental motion for summary judgment; alleging alternative theories is
permissible. See Tex. R. Civ. P. 48. We also reject Trans-Pecos's claim that Range relies
on a ground for summary judgment not presented to the trial court; the motion was
sufficient. Appellant's first issue is overruled.

 In issue two, Trans-Pecos maintains that the "final judgment of the trial court
decrees title to Range of an oil and gas lease it never alleged that it owned." Trans-Pecos
is correct in stating that Range's original petition, filed in May 2000, alleges ownership
of the lease through a written assignment by M.E. to Range on April 24, 2000. In its
summary judgment motion, however, Range pleaded ownership through a later lease
(August 2000) of the Flournoy family mineral rights to Range. Because Range did not
plead the August 2, 2000, lease in its original petition, Trans-Pecos argues the judgment
is unsupported by underlying pleadings and is erroneous. Range, on the other hand,
contends Trans-Pecos waived any complaint concerning the lack of pleadings to support
the motion for summary judgment. In Roark v. Stallworth Oil & Gas, Inc., the Texas
Supreme Court held that an unpleaded affirmative defense could be raised for the first time
in a movant's motion for summary judgment where the non-movant failed to object to the
trial court concerning its inclusion in the motion. See Roark, 813 S.W.2d 492, 495 (Tex.
1991). Trans-Pecos did not object below to the pleading variance it asserts here. 

 Trans-Pecos also points out that Range's motion for summary judgment reflects that
the August 2000 lease is recorded at volume 1293, page 12, of the records of Angelina
County, while Range's Supplemental motion for summary judgment gives the location as
volume 1295, page 12. We simply note that elsewhere in the supplemental motion the
correct citation is given; a copy of the lease -- with the correct citation noted on its face --
is attached as summary judgment evidence; and the judgment gives a correct reference to
the lease. 

 In issue two, Trans-Pecos also challenges the trial court's award of damages for
which there was no motion, evidence or pleading. We agree with this challenge. Without
supporting pleadings or evidence, the damages award is insupportable. See generally
Maeberry v. Gayle, 955 S.W.2d 875, 880 (Tex. App.--Corpus Christi 1997, no pet.). We
sustain issue two to the extent that it challenges the damages award; otherwise, issue two
is overruled. 

 In issue three, Trans-Pecos contends Range's only ground for claiming the lease is
as a bona fide purchaser; Trans-Pecos argues Range cannot be a bona fide purchaser
because Range had knowledge of Trans-Pecos's equitable claim. Range's rights under the
lease in relation to Trans-Pecos do not depend upon its being a bona fide purchaser. 
Trans-Pecos's rights under the Letter Agreement with M.E. expired on October 31, 1999,
when Trans-Pecos failed to pay the $18,000 required by the Agreement. At that point, M.
E. was free to assign the lease to whomever it wanted. Trans-Pecos's third issue is
overruled.

 In issue five, Trans-Pecos claims "the trial court erred in granting summary
judgment for Range when the affirmative defenses and controverting evidence of Trans-Pecos were not answered and disposed of as a matter of law." As we understand Trans-Pecos's brief, the evidence it addresses in issue five relates to Trans-Pecos's claims of
fraud and tortious interference. Any claims arising after the October 31, 1999, deadline
in the Letter Agreement have no merit because, as we have held herein, the Letter
Agreement expired on that date. 

 Trans-Pecos also appears to claim there was fraud or tortious interference in the use
of geological data. To the extent this claim covers events occurring after October 31,
1999, we simply note that Trans-Pecos itself supplied the geological data to Mark Smith,
Range, and others, and the information was not confidential or proprietary. The evidence
also established that Trans-Pecos supplied Range and its agent with the information Trans-Pecos wanted them to have. We overrule issue five. 

 In issue six, appellant complains of the award of attorney's fees to Mark Smith on
the sole ground that Smith testified Range agreed to pay his attorney's fees. Smith's
attorney's fees may be paid by Range pursuant to an agreement. That fact alone does not,
without more, establish that the award of attorney's fees is erroneous. No other issue
attacking the attorney's fees is presented on appeal. We therefore overrule issue six. 

 The portion of the judgment awarding damages is reversed and rendered; Range is
entitled to no damages from Trans-Pecos. The judgment is affirmed in all other respects. 

 REVERSED AND RENDERED IN PART AND AFFIRMED IN PART. 

 

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on June 13, 2002

Opinion Delivered October 17, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.