**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 28, 2006**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  05-20139

MOTIVA ENTERPRISES, LLC,

Plaintiff-Appellant

VERSUS

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ET AL,

Defendants,

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Texas, Houston Division

Before REAVLEY, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

IT IS ORDERED that the Petition for Panel Rehearing is GRANTED. The opinion of the court issued on February 6, 2006, at 439 F.3d 243, is withdrawn, and the following opinion substituted in its place.

1

Plaintiff-Appellant Motiva Enterprises, L.L.C. ("Motiva") settled an action brought against it for damages without notice to Appellee National Union, its insurer, and without obtaining National Union's consent. Motiva sued National Union to recover the amount Motiva paid in settlement, contending that it had no obligation to comply with the condition in the policy to obtain its insurer's consent to settle because National Union refused to tender an unqualified defense to Motiva. We agree with the district court that National Union's tender of a defense with a reservation of rights to later deny coverage does not excuse Motiva's breach of the consent-to-settle clause. We also conclude that National Union suffered prejudice as a matter of law and has no obligation to reimburse Motiva for the settlement. We therefore AFFIRM the judgment of the district court.

## I.

In July 2001, a sulfuric acid storage tank exploded at Motiva's Delaware refinery, killing one employee and injuring several others. A number of civil suits ensued, including a lawsuit by John and Pamela Beaver for injuries John sustained in the explosion (the "Beaver" suit).

Motiva had approximately $250 million in liability insurance which Motiva contended covered its liability for injuries and litigation costs related to the explosion. The coverage was

2

divided into two "towers," referred to as the Continental Tower and the St. Paul Tower, and consisted of seven insurance policies in all. National Union supplied $25 million of umbrella coverage, providing for both the duty to defend and the duty to indemnify once the underlying insurance was exhausted. The policy contained standard "consent-to-settle" and "cooperation" clauses. The consent-to-settle clause required National Union's advance consent to any settlements that it would be funding,[1] and the cooperation clause required Motiva to cooperate with National Union in the investigation, settlement, and defense of claims.[2]

In July 2002, Motiva notified National Union of the first two lawsuits that had been filed against it, including the Beaver suit, and requested a defense. In February 2003, National Union conditionally disclaimed coverage on the ground that the underlying insurance policies had not yet been exhausted. National Union reserved the right to supplement or amend its disclaimer in the future. When National Union did not withdraw its denial of coverage at Motiva's request, Motiva filed suit seeking a declaratory judgment of its coverage.

In May 2003, National Union sent Motiva a "reservation of

_____

[1]The consent-to-settle clause specifically states: "No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

[2]The cooperation clause specifically states: "You and any other involved Insured must: ... cooperate with us in the investigation, settlement or defense of the claim or suit."

3

rights" letter that withdrew its disclaimer of coverage, but reserved the right to withhold or limit coverage under the terms and conditions of the policy. On July 28, 2003, Motiva informed National Union that the St. Paul policy had been exhausted and that National Union would be responsible for the defense costs related to the remaining five suits. The next day, Motiva asked National Union to send a representative with full settlement authority to a mediation in the Beaver case that was scheduled for August 8, 2003. National Union immediately requested all documents related to Beaver, but on August 1, Motiva rejected the request, claiming that National Union had "never acknowledged coverage" for the Beaver claim. Despite that refusal, Motiva still demanded that National Union attend the mediation.

On August 6, National Union tendered its offer to defend the Beaver case and the other pending lawsuits, subject to a reservation of its right to deny coverage under the terms of the policy. National Union asked Motiva to cooperate fully with its defense – a requirement of the policy – and said that it expected to participate fully in the Beaver mediation. Despite the tender, Motiva refused to furnish the Beaver documents to National Union.

On August 8, National Union sent a representative to the mediation. During National Union's presence at the mediation, the only settlement demand it received was for $40 million. Before the mediation ended however, National Union's representative was asked

4

to leave. The mediation continued without National Union's presence and ultimately resulted in a voluntary settlement agreement in which Motiva agreed to pay $16,500,000 to resolve the claim.

After the mediation, Motiva asked National Union to fund the settlement, but National Union refused to do so on the grounds that its consent had not been obtained as required by the consent-to-settle clause. Motiva paid the settlement out of its own funds and after National Union again declined Motiva's request for reimbursement, Motiva filed this suit to recover sums it paid to settle the Beaver claim.

In December 2003, the parties submitted a Stipulated Chronology and Facts per the district court's order. National Union and Motiva filed cross-motions for summary judgment, and on August 26, 2004, the district court granted partial judgment for National Union, holding that Motiva should take nothing in the lawsuit because it had breached the consent-to-settle and cooperation clauses.

Following the district court's partial summary judgment in favor of National Union, Motiva filed a Motion for Reconsideration and to Amend Judgment and attached several affidavits contradicting the facts in the summary judgment record as interpreted by the district court. National Union filed a response in opposition and a motion to strike the affidavits as offering newly alleged facts.

5

The district court denied Motiva's Motion for Reconsideration and to Amend Judgment and stated that Motiva could not supplement the record with new facts.

Reviewing the district court's grant of summary judgment de novo, we consider each of Motiva's arguments below.

## II.

### A.

Motiva argues first that the district court erred in rejecting Motiva's claim for policy benefits based on breaches of consent-to-settle and cooperation clauses when National Union had not tendered an unqualified defense to Motiva. In other words, Motiva argues that when National Union's tender of a defense was subject to its reservation of rights to later deny coverage, Motiva was entitled to settle the Beaver claim without consulting National Union.

Motiva relies on our decision in Rhodes v. Chicago Insurance. Co., 719 F.2d 116 (5th Cir. 1983) for its argument that under Texas law, National Union's reservation of rights released Motiva from the constraint of the "consent-to-settle" clause. Motiva correctly quotes our statement that "[i]f the insurer properly reserved its rights and the insured elected to pursue its own defense, the insurer is bound to pay damages which resulted from covered conduct and which were reasonable and prudent up to the policy limits." Id. at 121. Motiva also recites our statement in Rhodes that in such a situation, "the insured is not constrained by conditions in

6

the policy which limit the insured's ability to settle the claim, and the insurer cannot complain about the insured's conduct of the defense." Id.

Unfortunately for Motiva, our holding in Rhodes was an "Erie guess" by us and has since been undermined by the Texas Supreme Court's decision in State Farm Lloyds Insurance. Co. v. Maldonado, 963 S.W.2d 38 (Tex. 1998). In Maldonado, State Farm tendered a defense with a reservation of rights to its insured, Robert, who had been sued for defamation by a former employee, Maldonado. When State Farm would not pay Maldonado's settlement demand, Maldonado and Robert entered into a private agreement in which Maldonado discharged Robert from further personal liability for Maldonado's damages. Robert, no longer having any incentive to contest the defamation claim at trial, failed to actively defend the claim through his attorney provided by State Farm. He did not present any evidence, cross-examine any witnesses, or present opening or closing arguments.

The trial resulted in a verdict in favor of Maldonado. State Farm denied coverage and contended that the trial constituted a breach of the "actual trial" condition of its insurance policy[3] and relieved State Farm of its duty to indemnify. The Texas Supreme Court agreed, holding that "[b]ecause State Farm agreed to defend

---

[3]The "actual trial" condition provided that "[a] person or organization may sue [State Farm] to recover on ...a final judgment against an insured obtained after an actual trial." 963 S.W.2d at 40.

7

Robert under a reservation of rights and Robert failed to satisfy a condition precedent of the insurance policy, Robert cannot sue or recover on the policy." Id. at 40.

Under Erie, we are, of course, obliged to decide questions of state law as we believe the state supreme court would decide the issue. Although a different policy condition was at issue in Maldonado, we see no principled basis to distinguish it from today's case. We conclude therefore that under Maldonado, an insurer which tenders a defense with a reservation of rights is entitled to enforce a consent-to-settle clause, and our holding in Rhodes does not accurately reflect current Texas law. The district court therefore did not err in holding that Motiva breached its insurance policy by settling without National Union's consent, even though National Union reserved its right to contest coverage and therefore did not tender to Motiva an unqualified defense.

### B.

We turn to the principal issue in this case, whether Motiva's settlement of the Beaver claim without giving National Union an opportunity to participate in the final settlement decision and without obtaining National Union's consent to the settlement precludes Motiva's action against National Union under the policy for reimbursement of the sum Motiva paid in settlement.

Motiva argues that even if it breached the consent-to-settle clause, National Union cannot refuse to pay policy benefits unless

8

it shows actual prejudice from the breach.  Motiva relies primarily on Hernandez v. Gulf Group Lloyds, 875 S.W. 2d 691 (Tex. 1994) to support its argument.

In Hernandez the daughter of the plaintiffs was killed in an automobile accident involving an underinsured driver who was solely at fault.  The parents and daughter had uninsured motorist coverage in their policy which also afforded protection for an underinsured motorist.  The plaintiffs settled with the underinsured driver for the limits of his insurance coverage and sought recovery from their UM carrier under the underinsured motorist coverage.  The parties stipulated that the underinsured driver had no assets and the UM carrier's subrogation rights were not impaired by the settlement. The UM carrier denied coverage on grounds that the plaintiffs had failed to obtain the insurer's consent to the settlement.  This denial was based on a settlement-without-consent clause, excluding coverage where the insured settles with any person who may be legally liable for the injury without the insurer's consent.[4]

The majority in Hernandez held that "an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor." Id. at 692. The court reasoned

---

[4]The clause provided that "insurance does not apply . . . to bodily injury or property damage with respect to which the insured . . . without written consent of the company, makes any settlement with any person . . . who may be liable therefore . . ." Id. at 692, n. 1.

9

that under fundamental contract law "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." Id. The court further reasoned, however, that when the insurer is not prejudiced by the breach, the breach is not material, the insurer has not been deprived of the benefit of the bargain, and it should not be relieved of its obligation to provide coverage. Id. at 693.

In Hanson Production Co. v. Americas Insurance. Co., 108 F.3d 627 (5th Cir. 1997), we applied Hernandez and held that when the insured fails to provide prompt notice of a claim as required by the policy, the insurer must show prejudice to avoid its coverage obligation.

In Ridglea Estate Condominium Ass'n v. Lexington Insurance Co., 415 F.3d 474 (5th Cir. 2005), a panel of this court recently applied Hernandez in a suit by an insured seeking recovery on a fire and windstorm policy. The insurer argued that it had no obligation under the policy because the insured failed to give "prompt notice of the loss or damage" to covered property. Id. at 476. In a narrowly written opinion, the panel applying Hernandez concluded that although notice of damage was not prompt, the district court erred in holding that the insurer was not required to show prejudice in order to rely on the prompt notice provision as a defense. The panel carefully noted, however, that it "[did] not read Hernandez as necessarily creating a prejudice requirement

for all insurance policies issued in Texas."  Id. at 480, n.4.

As suggested by Ridglea, it is not entirely clear under Texas law whether an insurer must demonstrate prejudice before it can avoid its obligations under a policy where the insured breaches a prompt-notice provision or a consent-to-settle provision.[5] Assuming without deciding that an insurer must show prejudice to avoid its obligations under the policy when the insured breaches the consent-to-settle provision, based on the summary judgment evidence in this case, we are satisfied that National Union suffered prejudice as a matter of law.  An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement.  When, as in this case, the insurer is not consulted about the settlement, the settlement is not tendered to it and the insurer has no opportunity to participate in or consent to the ultimate settlement decision, we conclude that the insurer is prejudiced as a matter of law. Under these circumstances the breach of the consent-to-settle provision in the policy precludes this action.  This disposition makes it unnecessary for us to consider whether Motiva breached the cooperation clause in the policy and whether that precludes recovery.

For the reasons stated above we AFFIRM the judgment of the

---

[5]For example, in PAJ Inc. v. Hanover, 170 S.W.3d 258 (Tex. App.–Dallas 2005)(pet. filed), a Texas court held that a breach of a notice provision was a "condition precedent" to the insurer's liability, not a "covenant," and thus, the insurer was not required to show prejudice from the breach.

11

district court.

AFFIRMED.