Opinion issued January 17, 2008










     



In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00509-CV





PETER J. YEH, Appellant

v.

DAVID J. MACDOUGALL, D.O., P.A. D/B/A NEUROSURGICAL
ASSOCIATION OF HOUSTON AND DAVID J. MACDOUGALL, D.O.,
Appellees





On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2003-65161




MEMORANDUM OPINION
          In this breach of contract lawsuit, appellant, Peter Yeh, appeals the final
judgment in favor of David MacDougall, D.O., P.A. d/b/a Neurosurgical Association
of Houston (“NAH”), rendered after a jury verdict. In five issues, Yeh contends that
(1) the evidence is legally and factually insufficient to support the jury’s finding that
NAH did not breach the oral agreement to provide billing and collection services;
(2) contingent on our determination that the evidence is legally or factually
insufficient on the negative finding on the element of breach, the trial court erred by
failing to award Yeh damages for breach of contract; and (3) Yeh was the prevailing
party at trial and therefore the attorney’s fees award in favor of NAH should be
reversed. We conclude that the evidence is legally and factually sufficient to support
the jury’s finding that NAH did not breach the billing and collection services
agreement and Yeh, therefore, is not entitled to any damages. We also conclude that
NAH was the prevailing party at trial and was entitled to reasonable attorney’s fees
for its successful breach of contract claim. We affirm the judgment of the trial court.
Background
          Yeh and MacDougall are both licensed neurosurgeons. MacDougall is the
principal of NAH. Yeh was an employee of NAH from July 1, 2000 to June 30, 2002. 
While Yeh worked for NAH, all profits generated by Yeh went to NAH and the NAH
staff provided all billing and collection services for Yeh. Yeh and MacDougall took
calls for each other in working together to provide services to patients. Yeh also
worked at hospital emergency rooms and received referrals from another doctor in
Houston.
          During the time Yeh was employed by NAH, Yeh expressed an interest in
starting his own practice. In January 2002, Yeh and MacDougall verbally agreed that
beginning July 1, 2002, Yeh would no longer be an employee of NAH so that Yeh
could begin his own practice. Their oral agreement also included that Yeh would pay
one-half of the shared overhead expenses, and NAH would continue to provide
facilities, and billing and collection services, for Yeh’s new practice. The shared
overhead expenses included items such as rent, telephone services, supplies, staff
salaries, office equipment, and workers’ compensation insurance. Excluded from the
shared expense agreement were the salaries of the individual physician assistants
employed by each of the doctors, cell phones, and personal health and malpractice 
insurance. Yeh told the NAH staff that he wanted the billing practices to remain the
same as when he was an NAH employee. 
          The “shared expense period” lasted from July 1, 2002 until March 1, 2003. 
During this time, NAH staff continued working for Yeh and MacDougall using the
same practices as before. The only change in the practices by the office after Yeh left
employment with NAH was that the office was to use a different provider designation
for Yeh and his physician’s assistant. Jeanne Williams, who worked for NAH doing
billing and collection work, stated that Yeh’s billing practices were often
disorganized. Yeh would provide Williams with notecards or slips of paper with a
patient name and record number, which required that Williams contact the hospital
to have the operative report faxed to her so that she would have the necessary
information to file the claim. MacDougall, on the other hand, gave Williams a “face
sheet” and a “pink sheet” for every patient he saw. The face sheet contained all
demographic information on the patient and the pink sheet was a detailed explanation
of the services performed by MacDougall for the patient. At the beginning of the
shared expense period, Yeh established a new bank account to receive his payments,
but did not immediately apply for a provider number from Medicare and other
insurance companies. Yeh stated that, at the time, he was unaware that he had to do
so.
          In February 2003, Yeh sent a letter to MacDougall indicating that he wished
to discontinue the shared expense agreement as of March 1, 2003. At the end of the
shared expense period, NAH had incurred $257,861.40 in shared expenses and Yeh’s
individual expenses. Yeh had paid $123,921.06 as of the end of the shared expense
period. NAH sent a demand letter to Yeh for the remaining $133,940.34, but noted
in the letter that Yeh was entitled to an offset in the amount of approximately $59,000
for deposits that had erroneously been placed in NAH’s account instead of Yeh’s
during the shared expense period. Yeh did not pay the amount requested by NAH.
          After Yeh did not pay the amount requested, NAH filed suit against Yeh for
breach of contract, promissory estoppel, and unjust enrichment and sought
$133,940.34 in damages, as well as pre- and post-judgment interest, attorney’s fees,
and costs. Yeh filed a counterclaim against NAH, MacDougall individually, and
Williams individually, alleging breach of contract, negligence, negligent
misrepresentation, fraud, and unjust enrichment, and seeking exemplary damages,
pre- and post-judgment interest, attorney’s fees, and court costs.
          In response to six questions, the jury found that (1) $113,627.51 “would fairly
and reasonably compensate NAH for Yeh’s unpaid shared overhead expenses”;
(2) $492,713.75 was a reasonable fee for NAH’s attorneys, with additional fees for
appeals taken; (3) $53,615.78 “would fairly and reasonably compensate Yeh for
misdirected deposits”; (4) $427,546.38 was a reasonable fee for Yeh’s attorneys, with
additional fees for appeals taken; (5) NAH agreed to provide billing and collection
services to Yeh, but MacDougall did not personally make such an agreement; and
(6) NAH did not breach the billing and collection services agreement.


 The trial
court’s final judgment awarded $60,011.73 to MacDougall in principal, which was
the amount due to NAH by subtracting the offset amount from the amount not paid
in overhead. The judgment also awarded $10,401.97 in prejudgment interest,
attorney’s fees in the amount of $458,851 based on a voluntary remittitur by NAH’s
counsel, special master’s fees of $5,076.06, auditor’s fees of $12,907.26, and
postjudgment interest on the total judgment at a rate of 7.25%. The court also stated
in its judgment that Yeh take nothing.
Sufficiency of the Evidence
          In his first and second issues, Yeh challenges the legal and factual sufficiency
of the evidence to support the jury’s finding that NAH did not breach its oral
agreement with him. The jury found the existence of a contract, but found no breach
by NAH. 
A. Legal Sufficiency Standard of Review
          “The final test for legal sufficiency must always be whether the evidence at
trial would enable reasonable and fair-minded people to reach the verdict under
review.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
“[L]egal-sufficiency review in the proper light must credit favorable evidence if
reasonable jurors could, and disregard contrary evidence unless reasonable jurors
could not.” Id. The evidence is legally sufficient if it “would enable reasonable and
fair-minded people to differ in their conclusions.” See id. at 822. As long as the
evidence falls within the zone of reasonable disagreement, “[a] reviewing court
cannot substitute its judgment for that of the trier-of-fact.” Id. Although the
reviewing court “must consider evidence in the light most favorable to the verdict,
and indulge every reasonable inference that would support it[,] . . . if the evidence
allows for only one inference, neither jurors nor the reviewing court may disregard
it.” Id. When a party attacks the legal sufficiency of an adverse finding on an issue
on which it has the burden of proof, the party must demonstrate on appeal “that the
evidence establishes, as a matter of law, all vital facts in support of the issue.” Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 
B. Factual Sufficiency Standard of Review
          In determining factual sufficiency, this court weighs all the evidence, both
supporting and conflicting, and may set the finding aside only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Comm’n of Contracts v.
Arriba Ltd., 882 S.W.2d 576, 582 (Tex. App.—Houston [1st Dist.] 1994, no writ).
C. Breach of Contract Applicable Law
          The elements of breach of contract are (1) the existence of a valid contract;
(2) performance or tendered performance by the plaintiff; (3) breach of the contract
by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. 
Valero Mktg. & Supply Co. v. Kalama Int’l, L.L.C., 51 S.W.3d 345, 351 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). Whether a party has breached a
contract is a question of law for the court, not a question of fact for the jury. Meek
v. Bishop, Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.—Houston [14th
Dist.] 1996, writ denied). “A breach occurs when a party fails or refuses to do
something he has promised to do.” Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex.
App.—Houston [1st Dist.] 2003, no pet.); Townewest Homeowners Ass’n, Inc. v.
Warner Commc’n Inc., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992,
no writ). 
          When one party to a contract commits a material breach of that contract, the
other party is discharged or excused from any obligation to perform. Hernandez v.
Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994). “The determination of
whether a breach is a material breach of the contract must necessarily turn on the facts
of each case.” Advance Components, Inc. v. Goodstein, 608 S.W.2d 737, 739 (Tex.
Civ. App.—Dallas 1980, writ ref’d n.r.e.). In determining the materiality of a breach,
the factfinder may properly consider: 
(i) the extent to which the nonbreaching party will be deprived of the
benefit that it could reasonably anticipate from full performance; (ii) the
extent to which the injured party can be adequately compensated for the
part of that benefit of which he will be deprived; (iii) the extent to which
the party failing to perform or to offer to perform will suffer forfeiture;
(iv) the likelihood that the party failing to perform or to offer to perform
will cure his failure, taking account of all the circumstances including
any reasonable assurances; (v) the extent to which the behavior of the
party failing to perform or to offer to perform comports with standards
of good faith and fair dealing. 
 
Hernandez, 875 S.W.2d at 693 & n.2. The less the nonbreaching party is deprived
of the expected benefit, the less material the breach. Id. at 693.
D. Analysis
          Yeh points to the same evidence to challenge the legal and factual sufficiency
of the evidence on the element of breach that was found against him by the jury in its
answer to question six, which asked if NAH failed to comply with the billing and
collection services agreement. Yeh asserts that although he was paying half the
overhead expenses, there was a disparity in the collections for MacDougall and the
collections for Yeh. Yeh contends the evidence establishes that “NAH did not do that
which it had agreed to do—bill and collect for Dr. Yeh as it billed and collected for
Dr. MacDougall and as it had for Dr. Yeh when he was an employee of NAH.” Yeh
contends his position is supported by conclusive evidence from Jeanne Williams,
NAH, the Medical Manager Program, and the voluminous patient records maintained
by NAH.


 Yeh points to evidence that shows that NAH’s conduct caused him to lose
revenue because (1) NAH failed to timely obtain payment on his claims to insurance
companies; (2) NAH failed to appeal all denied charges; (3) NAH wrote off account
balances without his knowledge or consent; (4) NAH failed to submit his claims to
the patient’s insurance carrier within five to seven days of service; and (5) NAH
failed to make a good faith effort to collect co-payments or deductibles from his
patients. Yeh further points to the jury’s answer in question number three, which
found that NAH misdirected deposits in an amount of $53,000.
          The record supports Yeh’s contention that there was a disparity in the
collections for MacDougall and the collections for Yeh. The record also undisputedly
shows that Yeh requested that NAH continue to provide the same services to him that
NAH had provided when he was a part of NAH. NAH responds that the same
services were provided to Yeh during the shared expense period as when Yeh was
employed by NAH, and that there was no material deviation from those services. 
NAH contends that the reason for the disparity in the collections is the type of work
performed by each of the doctors and the adequacy of the information tendered to the
staff by each of the doctors. 
          Jeanne Williams, who does NAH’s billing and collections work, testified that
she performed billing and collection services for Yeh during the shared expense
period, in accordance with his instructions that the NAH staff was to continue the
same procedures employed as when Yeh was a part of NAH. She also testified that
Yeh’s billing practices were much more disorganized than those of MacDougall. 
Yeh’s practice of providing patients’ names and record number on torn slips of paper
or note cards required that Williams spend additional time acquiring the operative
report to file his claims, but MacDougall’s practice of providing the detailed face
sheet and pink sheet with a description of his work with appropriate billing codes
facilitated Williams’s ability to quickly file claims for MacDougall. Williams further
stated that she spent more time processing billing for Yeh than for MacDougall. 
MacDougall testified that the disparity in collection amounts may have been due to
the type of work Yeh was doing. Yeh often did trauma work in emergency rooms and
other emergency surgeries, which can have a lower collection rate because of the
number of emergency room patients that do not have insurance or the ability to pay. 
Furthermore, Yeh himself testified that he did not “have a good handle on how things
[were] running in the office.”
          As conclusive evidence of breach, Yeh points to the jury’s answer in question
number three, which found that NAH owed Yeh $53,615.78 for misdirected deposits. 
NAH admitted that these misdirected deposits were owed to Yeh prior to filing suit
against Yeh. MacDougall testified that he spoke with Yeh regarding these deposits,
and the two had exchanged checks to resolve the issues once before. MacDougall
also testified that Yeh did not immediately obtain a tax identification number and
Medicare/Medicaid provider number for his solo practice, which resulted in the
attribution of some of Yeh’s work to MacDougall, who was, after Yeh’s departure,
the only NAH doctor. As the only doctor, all income received was placed in
MacDougall’s account. MacDougall stated that human error could have contributed
to the misdirected deposits, but that it occurred in favor of Yeh as well.
          Viewing the evidence in the light most favorable to the verdict, we conclude
that reasonable and fair-minded people could reach the conclusion that NAH did not
breach its agreement to provide billing and collection services because NAH made
reasonable efforts to bill and collect on behalf of Yeh, and Yeh’s type of work and
his billing practices resulted in the disparate collection rates and misdirected deposits. 
We hold that the evidence was legally sufficient to support the jury’s finding that
NAH did not breach the agreement. We overrule Yeh’s first issue.
          Viewing the evidence in a neutral light, we cannot conclude that the jury’s
finding that NAH did not breach the billing and collection services agreement was
clearly wrong and manifestly unjust. We hold that the evidence was factually
sufficient to support the jury’s finding that NAH did not breach the agreement. We
overrule Yeh’s second issue. We also overrule Yeh’s third issue, which is contingent
on a favorable ruling on issues one or two.



Award of Attorney’s Fees
          In his fourth issue, Yeh contends that the trial court erred in awarding
attorney’s fees to NAH of $458,851 in its final judgment.


 Specifically, he asserts
that NAH is not entitled to legal fees because Yeh stipulated that he owed NAH for
overhead expenses, NAH was not the “prevailing party” in the lawsuit and that NAH
cannot recover attorney’s fees for merely successfully defending against his breach
claim.


 Whether a party is entitled to attorney’s fees is a question of law that we
review de novo. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999). As
a general rule, each party bears the cost of its own attorney, absent a contractual or
statutory provision to the contrary. Panizo v. Young Men’s Christian Ass’n of the
Greater Houston Area, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996,
no writ). Section 38.001(8) of the Civil Practice and Remedies Code provides that
a party may recover reasonable attorney’s fees if its claim is for “an oral or written
contract.” Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2003). “To
recover attorney’s fees under Section 38.001, a party must (1) prevail on a cause of
action for which attorney’s fees are recoverable and (2) recover damages.” Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Ryan v. Abdel-Salam, 39 S.W.3d
332, 337 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). If both parties receive
some judgment, the prevailing party is “the party vindicated by the judgment
rendered.” See Brown v. Fullenweider, 135 S.W.3d 340, 347 (Tex. App.—Texarkana
2004, pet. denied). Section 38.001 does not allow for an award of attorney’s fees for
a party’s successful defense against a breach of contract claim. Cytogenix, Inc. v.
Waldroff, 213 S.W.3d 479, 490–91 (Tex. App.—Houston [1st Dist.] 2006, no pet.).
However, fees incurred in defending a breach of contract counterclaim can be
recovered to the extent they are necessary to a party’s recovery on its original breach
of contract claim. Varner v. Cardenas, 218 S.W.3d 68, 69 (Tex. 2007).
          While Yeh is correct that NAH may not recover attorney’s fees solely for
successfully defending a contract claim against it, NAH also sued for breach of
contract and was successful in its suit. NAH sought to collect the amount due in
overhead expenses without litigation by sending a demand letter to Yeh’s attorney.
In its demand letter, NAH acknowledged the amount owed to Yeh for misdirected
deposits. NAH never disputed that it owed Yeh an offset for the amount of the
misdirected deposits. When Yeh did not pay the amount due for the overhead
expenses, which was an amount that exceeded the amount NAH owed Yeh for the
misdirected deposits, NAH brought a breach of contract suit to recover the
outstanding overhead expenses. Yeh filed a counterclaim for breach of contract
stemming from NAH’s failing to follow up with insurers about payment, failing to
collect co-pays from patients, and committing other billing errors. The jury found
that Yeh owed NAH $113,627.51 for overhead expenses incurred during the shared
expense period. The jury also found that Yeh was entitled to an offset of $53,615.78
for NAH’s misdirected deposits. The jury found against Yeh on his counterclaim,
finding no breach by NAH. In the trial court’s final judgment, it rendered judgment
in favor of NAH for the net amount of $60,011.73. 
          Because NAH was successful on its breach of contract claim and was awarded
damages, NAH was entitled to recover attorney’s fees under section 38.001. Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8); Green Int’l, Inc., 951 S.W.2d at 390. 
Although the award to NAH was reduced by the amount NAH owed to Yeh, we
cannot conclude that this offset means that NAH was not the prevailing party at trial. 
NAH never disputed that it owed the amount from the misdirected deposits, and
acknowledged that debt in the demand letter sent to Yeh prior to the beginning of
litigation. The judgment for the overhead amount exceeds the amount NAH owed to
Yeh for the misdirected deposits. Further, NAH can recover attorney’s fees for its
defense against Yeh’s counterclaim because NAH could not have prevailed but for
the successful defense. See Varner, 218 at 69. We hold that the trial court did not err
by awarding attorney’s fees to NAH by determining that it was the prevailing party
“vindicated by the judgment rendered.” Brown, 135 S.W.3d at 347.
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court. All pending motions are denied as
moot. 
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.