TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00687-CV







Lazy M Ranch, Ltd., Appellant



v.



TXI Operations, LP, as successor and assignee of Texas Industries, Inc., Appellee







FROM THE DISTRICT COURT OF LIBERTY COUNTY, 253RD JUDICIAL DISTRICT


NO. 53453, HONORABLE W. G. WOODS, JR., JUDGE PRESIDING








 TXI Operations, LP ("TXI") sued Lazy M Ranch, Ltd. ("Lazy M") for specific
performance of a contract giving TXI an option to lease land for mining. (1) The trial court granted
TXI's motion for summary judgment, awarding TXI specific performance of the option provision.
Lazy M appeals the trial-court order. We will reverse the summary-judgment order and remand
the cause to the trial court.


THE CONTROVERSY

 TXI wished to explore a portion of the Lazy M land for sand, gravel, and other
construction materials and to obtain an option right to mine the materials if prospects proved
favorable. In September 1995 the company began negotiations with Dr. George Morris, Jr., the
owner of Lazy M. 

 In February 1996 Dr. Morris informed TXI of the creation of Lazy M Ranch, Ltd.,
("Lazy M"), a limited partnership. Dr. Morris was president of Lazy M's sole general partner,
Lazy M Management, L.L.C. Ownership of the ranch had been transferred to the partnership. 
At this time, Dr. Morris was suffering from a serious illness but continued to negotiate the lease
on behalf of Lazy M.

 On April 1, 1996, TXI and Dr. Morris (representing Lazy M) executed a written
contract. The contract required TXI to pay Lazy M $2,000 for the right to explore by conducting
subsurface tests on a part of Lazy M land--1,669 acres specifically described in the contract by
metes and bounds. For the same consideration, the contract gave TXI an exclusive and
irrevocable option to lease 300 of the 1,669 acres to mine subsurface materials. To exercise
the option right, the contract required TXI to (1) give Lazy M written notice of its election within
six months of the April 1 contract and (2) tender $98,000 to Lazy M. TXI paid the required
$2,000 and began exploration under the contract. 

 Dr. Morris died in August 1996. On September 27, 1996, TXI attempted to
exercise its option by delivering the required written notice accompanied by a $98,000 bank check. 
Dr. Morris's son, George Morris, III, who had succeeded his father as president of Lazy M
Management, L.L.C., refused to lease any of the land to TXI. He returned TXI's check with a
letter explaining that Lazy M would not lease the land as promised because TXI had breached the
contract by entering upon and testing Lazy M's land outside the 1,669 acres specified in the
contract. Morris further stated he believed TXI had unfairly procured the agreement by taking
advantage of the ailing Dr. Morris.

 TXI sued Lazy M for specific performance of its obligation to give a lease. The
trial court granted TXI's summary-judgment motion and awarded TXI specific performance. Lazy
M brings four points of error: (1) there exists a genuine issue of material fact as to whether Dr.
Morris had the mental capacity to enter into a binding contract at the time the contract was
executed; (2) TXI materially breached the contract before attempting to exercise the option,
thereby excusing Lazy M from performance; (3) TXI is not entitled in equity to specific
performance because TXI had "unclean hands" in the transaction; and (4) Lazy M did not have
adequate notice or opportunity to respond to new arguments and additional grounds TXI raised
to support its motion for summary judgment. 

 A movant for summary judgment has the burden of showing its entitlement to
judgment as a matter of law. In deciding whether a disputed issue of material fact precludes
summary judgment, proof favorable to the nonmovant will be taken as true and every reasonable
inference will be indulged to resolve any doubt in favor of the nonmovant. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 


Material Breach Excusing Lazy M from Performance

 The parties do not dispute that TXI gave timely notice of its election to lease the
property described in the contract; they do not dispute that TXI tendered the required $98,000. 
In its second point of error Lazy M contends the summary judgment is nevertheless erroneous
because the record contained genuine issues of material fact. These pertain to Lazy M's
affirmative defense that TXI materially breached the contract while Lazy M's obligation to deliver
a lease remained executory. See Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). A
party to a contract may elect to terminate the contract and be excused from performance of any
executory obligation if the other party repudiates the contract or commits a material breach. See
MJR Corp. v. B & B Vending Co., 760 S.W.2d 4, 20-21 (Tex. App.--Dallas 1988, writ denied);
Corso v. Carr, 634 S.W.2d 804, 808 (Tex. App.--Fort Worth 1982, writ ref'd n.r.e.); Board of
Regents of University of Texas v. S & G Const. Co., 529 S.W.2d 90, 97 (Tex. Civ. App.--Austin
1975, writ ref'd n.r.e.). 

 In addition to pleading the foregoing defense, Lazy M urged the defense in
opposition to TXI's motion for summary judgment supported by the affidavit of George C.
Morris, III. The affidavit states as follows:


Contrary to the agreement, TXI personnel roamed throughout other parts of the
Ranch and conducted testing and coring outside of the area subject to the
agreement. Ranch personnel saw TXI conducting [tests] outside of the area subject
to the agreement. We found numerous core holes outside of [the area]. We
repeatedly objected to the continued violations. In the sand and gravel business,
the data from testing and coring is valuable. . . . TXI . . . stole valuable
information about the subsurface potential of the Ranch. . . . These breaches
occurred and had been communicated to TXI before TXI tendered the check and
notice of intent to exercise its option to lease.


Nothing in the summary-judgment record contradicts the facts set forth in the affidavit; they must
be taken as undisputed. The issue reduces to whether those facts show prima facie the "material"
breach necessary to the defense. We believe the undisputed facts show prima facie a "material"
breach.

 It is generally said that breach of a "dependent" covenant of the contract may give
the non-breaching party an election to terminate the contract while breach of an "independent"
covenant will not; in the latter case, the non-breaching party may only recover for the breach in
a separate cause of action. See, e.g., Investors' Utility Corp. v. Challacombe, 39 S.W.2d 175,
178 (Tex. Civ. App.--Waco 1930, no writ). It is also said that whether a covenant is dependent
or independent depends on the parties' intention at the time the contract is made. See, e.g., John
R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 86 (Tex. App.--Houston [14th Dist.] 1996, writ
denied). The parties' intention is, however, not always discernable from the contract language
and the parties often neglect entirely to consider whether they intend a particular covenant to be
dependent or independent. For that reason, "it is better to drop any talk about the intention of the
parties when they express none and rest doctrines of [constructive dependence] solely on their
fairness--a quite sufficient basis." 6 Williston on Contracts § 825 (3d ed. 1962).

 In the present case, the parties' contract expressly limits the ranch area that TXI
would be permitted to explore. By agreeing to this restriction, TXI impliedly covenanted not to
explore outside the restricted area. Nothing in the contract language expressly indicates, however,
whether the parties intended the implied covenant to be dependent or independent. We turn then
to the question of fairness as suggested by Williston. 

 If the implied covenant is held to be dependent, TXI will forfeit its right to an
option. Forfeitures will be avoided unless contract language admits of no other construction or
results in a construction that is unreasonable, inequitable, or oppressive. Reilly v. Rangers
Management, Inc., 727 S.W.2d 527, 530 (Tex. 1987). In this connection, several factors may be
considered.

 One factor is the extent to which the non-breaching party will be deprived of the
benefit it reasonably could have anticipated had the breach not occurred. "The less the non-breaching party is deprived of the expected benefits, the less the material breach." Hernandez v.
Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994). In the present case, it is not shown that
Lazy M is deprived of any benefit by reason of the breach; the summary-judgment record shows
without contradiction, however, that the breach caused injury to Lazy M.

 The following factors also suggest that it would be unreasonable, inequitable, and
oppressive to regard the breach as pertaining merely to an independent covenant:


(1) the extent to which the injured party can be adequately compensated for the part
of the benefit of which he will be deprived;


* * * 



(3) the likelihood that the party failing to perform will cure his failure, taking into
account all of the circumstances including any reasonable assurances; and 


(4) the extent to which the behavior of the party failing to perform comports with
standards of good faith and fair dealing. 



See Restatement of Contracts (Second) § 241(a) (1981); Gulf Group Lloyds, 875 S.W.2d at 693.


 The Morris affidavit shows prima facie that TXI's trespasses were intentional and
repeated over several protests by Lazy M. In addition to injuries to the surface of land outside
the restricted area, TXI obtained information about the geology of the subsurface of that
land--information that belonged to Lazy M and information that TXI acquired in violation of the
contract and without any right whatever. This is distinctly unlike a simple case of surface trespass
and the repair of any surface injury for which reasonable compensation may be calculated and
paid. The record does not show that TXI made any reasonable assurances regarding a cure for
its wrongs or the injuries it inflicted on Lazy M, including compensation for any non-tangible
injuries resulting from the sub-surface information it obtained. The factor of good faith and fair
dealing weighs most heavily against TXI in light of its repeated testing of areas outside the area
specified in the contract over Lazy M's repeated objections. Nothing in the record refutes
Morris's affidavit declaration that "[i]n the sand and gravel business, the data from testing and
coring is valuable" and that TXI "stole valuable information about the subsurface potential of the
ranch." In light of these factors, we believe it would be inequitable, unreasonable, and oppressive
to construe as an independent covenant TXI's implied covenant not to explore outside the area
delimited in the contract.

 TXI contends that even if its breach was material, Lazy M waived its right to
terminate the contract by allowing TXI to continue testing after the breach. (2) See Chilton Ins. Co.
v. Payton Pate Enters., Inc., 930 S.W.2d 877, 887-88 (Tex. App.--San Antonio 1996, writ
denied) ("[T]reating a contract as continuing, after a breach, deprives the nonbreaching party of
any excuse for terminating their own performance."). It is not shown in the record, however, that
Lazy M treated the contract as continuing. Neither party explains in the record when the alleged
trespasses occurred or when Lazy M voiced its objections to them. The record does not show that
Lazy M failed to voice its objections within a reasonable period of time or that there was the type
of delay between the time Lazy M discovered the breach and the time it repudiated the contract
such that Lazy M waived as a matter of law any right to end the contract.

 For the foregoing reasons, we sustain Lazy M's second point of error.


Specific Performance

 Even if TXI's breach was not a material breach of a dependent covenant, the record
does not demonstrate that TXI was entitled as a matter of law to the equitable remedy of specific
performance:


In the language of Lord Selborne: "the principle which is material to be considered
is, that the court gives specific performance instead of damages only when it can
by that means do more perfect and complete justice." The foundation and measure
of the jurisdiction is the desire to do justice, which the legal remedy would fail to
give. This justice is primarily due to the plaintiff, but not exclusively, for the
equities of the defendant are also protected. Specific performance is, therefore, a
conscious attempt on the part of the court to do complete justice to both the parties
with respect to all the judicial relations growing out of the contract between them.



4 Pomeroy's Equity Jurisprudence § 1401 at 1033 (5th ed. 1941) (emphasis in original).


 Lazy M argues that even if its failure to honor the option agreement entitled TXI
to some relief, perhaps damages, TXI is not entitled to the equitable remedy of specific
performance because it comes to the court with "unclean hands." Under the doctrine of unclean
hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful
or inequitable conduct regarding the issue in dispute. See Right to Life Advocates, Inc. v. Aaron
Women's Clinic, 737 S.W.2d 564, 571 (Tex. App.--Houston [14th Dist.] 1987, writ denied). 

 TXI contends that the doctrine of "unclean hands" cannot apply in the present
circumstances. According to TXI, even if it breached the lease by trespassing outside the
restricted area, its inequitable conduct was unrelated to the issue in dispute. See Axelson v.
McIlhany, 798 S.W.2d 550, 556 (Tex. 1990) (doctrine of unclean hands held inapplicable where
inequitable conduct unrelated to relief sought by petitioners). 

 We do not believe TXI's trespass was unrelated to TXI's attempt to enforce the
contract. We agree the doctrine of unclean hands does not apply when a party is guilty of 
inequitable conduct with regard to a transaction separate from the one in dispute. First Coppell
Bank v. Smith, 742 S.W.2d 454, 464 (Tex. App.--Dallas 1987, no writ). But in this case, the
issue in dispute is whether TXI is entitled to enforce rights embodied in the very contract that TXI
allegedly violated.


The equitable maxim as to clean hands "is confined to misconduct in regard to, or
at all events connected with, the matter in litigation, so that it has in some measure
affected the equitable relations subsisting between the two parties, and arising out
of the transaction; it does not extend to any misconduct, however gross, which is
unconnected with the matter in litigation, and with which the opposite party has no
concern.

* * * 



The rule does not go so far as to prohibit a court of equity from giving its aid to a
bad or faithless man or a criminal. The dirt upon his hands must be his bad
conduct in the transaction complained of. If he is not guilty of inequitable conduct
toward the defendant in that transaction, his hands are as clean as the court can
require.



2 Pomeroy's Equity Jurisprudence §399 at 95-96 (5th ed. 1941) (emphasis added). It may not
reasonably be contended that TXI's alleged misconduct did not grow out of or is unconnected to
the lease-option transaction, or that it is a matter with which Lazy M has no concern. We hold
accordingly.

 Finally, the summary-judgment record is not sufficiently developed so as to permit
a court to determine as a matter of law a set of facts that would entitle TXI to specific performance
in equity. When a trial court purports to make a decision without a sufficient factual basis, it is
said that the court abuses its discretion. See Dallas General Drivers v. Wamix, Inc. of Dallas, 295
S.W.2d 873, 878 (Tex. 1956); Powers v. Temple Trust Co., 78 S.W.2d 951, 952 (Tex. 1935);
Haden Employees' Ass'n v. Lovett, 122 S.W.2d 230, 233 (Tex. Civ. App.--Galveston 1938, writ
ref'd). We hold accordingly and sustain Lazy M's third point of error.

 The points of error discussed above are dispositive of the appeal.


 We reverse the summary judgment and remand the cause to the trial court.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: September 24, 1998

Publish

1. TXI Operations, LP, is successor and assignee of Texas Industries, Inc.
2. TXI also asserts it cured any alleged breach by ceasing its trespassing. According to TXI,
Lazy M "asserts that it complained of [the] alleged testing and that such testing was thereafter
ceased." TXI refers us to Morris's affidavit. We find in Morris's affidavit no assertion that TXI
ceased its unauthorized testing. To this extent TXI misstates the record.


ispute. See Right to Life Advocates, Inc. v. Aaron
Women's Clinic, 737 S.W.2d 564, 571 (Tex. App.--Houston [14th Dist.] 1987, writ denied). 

 TXI contends that the doctrine of "unclean hands" cannot apply in the present
circumstances. According to TXI, even if it breached the lease by trespassing outside the
restricted area, its inequitable conduct was unrelated to the issue in dispute. See Axelson v.
McIlhany, 798 S.W.2d 550, 556 (Tex. 1990) (doctrine of unclean hands held inapplicable where
inequitable conduct unrelated to relief sought by petitioners). 

 We do not believe TXI's trespass was unrelated to TXI's attempt to enforce the
contract. We agree the doctrine of unclean hands does not apply when a party is guilty of 
inequitable conduct with regard to a transaction separate from the one in dispute. First Coppell
Bank v. Smith, 742 S.W.2d 454, 464 (Tex. App.--Dallas 1987, no writ). But in this case, the
issue in dispute is whether TXI is entitled to enforce rights embodied in the very contract that TXI
allegedly violated.


The equitable maxim as to clean hands "is confined to misconduct in regard to, or
at all events connected with, the matter in litigation, so that it has in some measure
affected the equitable relations subsisting between the two parties, and arising out
of the transaction; it does not extend to any misconduct, however gross, which is
unconnected with the matter in litigation, and with which the opposite party has no
concern.

* * * 



The rule does not go so far as to prohibit a court of equity from giving its aid to a
bad or faithless man or a criminal. The dirt upon his hands must