

# MEMORANDUM OPINION

No. 04-09-00148-CV

**CENTRAL TEXAS ORTHOPEDIC PRODUCTS, INC.**,
Appellant

v.

Andrew **ESPINOZA** and Howmedica Osteonics Corp**.** d/b/a Stryker Orthopedics,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-12735
Honorable Karen Pozza, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Justice
             Rebecca Simmons, Justice
             Marialyn Barnard, Justice

Delivered and Filed:    December 9, 2009

REVERSED AND REMANDED

Central Texas Orthopedic Products, Inc. ("CTOP") brought suit against Andrew Espinoza

for breach of contract and breach of fiduciary duty.  CTOP also sued Howmedica Osteonics Corp.,

d/b/a Stryker Orthopedics ("Stryker") for tortious interference with Espinoza's contract.  After the

trial court granted partial summary judgment in favor of Espinoza and Stryker, a jury found in favor

---

[1] Although the final judgment was signed by the Honorable Karen Pozza, the summary judgments that were incorporated into the final judgment were signed by the Honorable Andy Mireles, presiding judge of the 73rd Judicial District Court.

of CTOP on its claim for breach of fiduciary duty, but awarded no damages. On appeal, CTOP asserts the trial court erred in granting the partial motion for summary judgment in favor of Espinoza and Stryker and in awarding attorney's fees to Espinoza. We reverse the trial court's judgment and remand.

## BACKGROUND

CTOP sells and services orthopedic implants. Espinoza began working as a sales representative for CTOP in the fall of 2003. Espinoza signed a Confidentiality and Non-Competition Agreement (the "Non-Compete Agreement") in which CTOP promised to provide Espinoza with confidential information and training in exchange for Espinoza's promise not to disclose the confidential information, compete with CTOP, or solicit any of CTOP's customers for one year after his employment with CTOP ended. After Espinoza signed the Non-Compete Agreement, CTOP provided Espinoza with confidential information, including CTOP business and marketing plans, customer and product lists, pricing information, financial information, sales volume data, and product techniques. CTOP also provided Espinoza with private training information and sent him to four annual National Sales Meetings where he received information about new products, existing products, clinical trial results, and competitive strategies.

During the spring of 2007, Espinoza began looking for other employment with CTOP competitors, including Stryker. In March and April of 2007, Espinoza met with Stryker representatives several times and visited Stryker facilities, including Stryker headquarters in New Jersey.

On August 14, 2007, Espinoza delivered a letter of resignation with a two-week notice to CTOP. The next day CTOP told Espinoza to turn in his CTOP materials and supplies, and CTOP changed the locks at the San Antonio office.

On August 15, 2007, CTOP issued Espinoza a pay check for the gross amount of $12,999.30 for the pay period of August 1, 2007, to August 15, 2007. After August 15, 2007, Espinoza did not contact CTOP again. CTOP, on the other hand, attempted to contact Espinoza several times to collect $485.30 it believed Espinoza owed pursuant to their Compensation Agreement, which was signed by Espinoza in June of 2007, and stated Espinoza promised to repay certain compensation to CTOP if he resigned within six months of signing the Compensation Agreement. On August 20, 2007, CTOP sent Espinoza a termination of employment letter, outlining Espinoza's contractual obligations as set out in the Non-Compete and Compensation Agreements.

Thereafter, CTOP sued Espinoza for breaching the Non-Compete and Compensation Agreements. It also alleged breach of fiduciary duty. Concomitantly, CTOP sued Stryker for tortious interference with Espinoza's contract. In response, Espinoza filed a counterclaim against CTOP, alleging he was due additional compensation for late July and August commission sales in the gross amount of $12,455.97, which included a deduction for the $485.30 owed to CTOP pursuant the Compensation Agreement.

Espinoza and Stryker filed a joint traditional summary judgment motion on the following grounds: (1) CTOP cannot recover on its claim relating to the Non-Compete Agreement because it has unclean hands; (2) Espinoza is entitled to recover $12,455.97 for commissions due but unpaid

by CTOP; and (3) CTOP cannot recover on its tortious interference claim because it has unclean hands.[2] The trial court granted summary judgment in favor of Espinoza and Stryker.

CTOP's breach of fiduciary duty claim proceeded to trial. The jury found Espinoza breached his fiduciary duty to CTOP, but awarded no damages. The trial court later entered a final judgment, incorporating the summary judgment, and awarded Espinoza $12,455.07 in unpaid compensation from CTOP, and $15,000 in attorney's fees for trial, interest, and costs. CTOP appeals, claiming the trial court improperly granted: (1) Espinoza's motion for summary judgment on CTOP's breach of contract claim; (2) Espinoza's motion for summary judgment on Espinoza's counterclaim for breach of contract; and (3) Stryker's motion for summary judgment on CTOP's tortious interference with contract claim. In its last issue, CTOP asserts the trial court erred in awarding attorney's fees to Espinoza.

### STANDARD OF REVIEW

We review a trial court's order granting a traditional summary judgment motion de novo. *Mid-Century Ins. Co of Texas v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). To be entitled to an order granting a traditional summary judgment motion, the movant bears the burden of showing no genuine issue of material fact exists, and it is, therefore, entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A matter of law is conclusively established if reasonable minds cannot differ as to the conclusion to be drawn from the evidence. *Allbritton v. Gillespie Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 891 (Tex. App.—Dallas 2005, pet. denied). In reviewing an order granting a traditional summary judgment motion, we indulge every reasonable inference in favor of

---

[2] Although the motion is labeled a "traditional and no-evidence" summary judgment motion, on appeal, CTOP has not raised any issues with regard to Espinoza's and Stryker's no-evidence claims. Accordingly, only the grounds relevant to this appeal are included.

the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## DISCUSSION

### A. CTOP's Breach of Contract and Tortious Interference Claims

In its first and third issues, CTOP argues the trial court erred in granting Espinoza's and Stryker's motion for summary judgment on the breach of contract and tortious interference claims based on the contention that the Non-Compete Agreement is unenforceable under the clean hands doctrine. According to CTOP, to the extent the clean hands doctrine would have invalidated the enforceability of the Non-Compete Agreement, the clean hands doctrine is superseded by the Covenants Not to Compete Act ("the Act"). *See* TEX. BUS. & COM. CODE ANN. § 15.52 (Vernon 2002). CTOP argues the Act expressly preempts common law actions to enforce a covenant not to compete, and therefore, as a common law principle, the clean hands doctrine is expressly preempted by the Act. *See id.*

Espinoza counters that the Act does not preempt the equitable principle of clean hands. Espinoza argues the preemptive provision in the Act does not apply to equitable principles, such as the clean hands doctrine. Accordingly, the Act has no impact on the application of the unclean hands doctrine to the enforceability of the Non-Compete Agreement. We need not decide whether the statute preempts the application of the unclean hands doctrine with respect to the enforceability of the Non-Compete Agreement. Espinoza did not establish that CTOP had unclean hands as a matter of law.

According to Espinoza, CTOP had unclean hands because CTOP failed to pay him $12,455.97, his earned commissions for sales made during late July and August 2007. Espinoza

argues he established CTOP's unclean hands as a matter of law because: (1) CTOP's July 2007 commission records document a net balance of $12,455.97 owed to Espinoza for sales; (2) the deposition and other testimony of CTOP's president, Paul Eichler, prove Eichler instructed CTOP's office manager, Sharon White, to withhold any monies that might have been due Espinoza after August 15, 2007; and (3) White's deposition established no check was issued to Espinoza pursuant to Eichler's instructions.

The clean hands doctrine is an equitable affirmative defense that requires a party seeking equity to come to court with clean hands. *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 876 (Tex. App.—Dallas 2005, no pet.). "Equitable relief is not warranted when the plaintiff has engaged in unconscionable, unjust, or inequitable conduct with regard to the issue in dispute." *Dunnagan*, 204 S.W.3d at 41; *see also Flores v. Flores,* 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.) ("The doctrine applies against a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and righteous dealing."). However, the trial court cannot apply the unclean hands doctrine unless "the misconduct at issue is connected to the subject of the litigation and the party asserting the defense has been seriously harmed by the misconduct." *Afri-Carib Enters., Inc. v. Mabon Ltd.,* 287 S.W.3d 217, 222 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Flores*, 116 S.W.3d at 876; *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied) .

Here, the disputed issue concerns the enforceability of the Non-Compete Agreement. However, CTOP's alleged failure to pay Espinoza did not grow out of obligations outlined in the

Non-Compete Agreement. Rather, the only contract from which CTOP's obligation to compensate Espinoza could arise is the Compensation Agreement. Because "the doctrine of unclean hands does not apply when a party is guilty of inequitable conduct with regard to a transaction *separate* from the one in dispute," Espinoza cannot establish that CTOP had unclean hands as a matter of law based on the contention that CTOP failed to pay Espinoza pursuant to the Compensation Agreement. *See Lazy M Ranch, Ltd.,* 978 S.W.2d at 683. Therefore, because CTOP's alleged inequitable conduct with regard to the Compensation Agreement is separate from the issue in dispute, we hold Espinoza did not establish CTOP had unclean hands as a matter of law. *See Afri-Carib Enters., Inc.*, 287 S.W.3d at 222; *Flores*, 116 S.W.3d at 876; *Lazy M Ranch, Ltd.,* 978 S.W.2d at 683.

Accordingly, the trial court erred in granting the summary judgment motion with regard to CTOP's claim that Espinoza breached the Non-Compete Agreement.

## B. *Espinoza's Counterclaim for Breach of Contract*

In its second issue, CTOP argues the trial court erred in granting Espinoza's motion for summary judgment on Espinoza's counterclaim for breach of contract. CTOP asserts Espinoza was not entitled to be paid any additional compensation because Espinoza breached his fiduciary duty by disclosing confidential information to Stryker.

In his motion for summary judgment, Espinoza claimed CTOP breached its contractual obligation to him and violated the provisions of the Texas Payday Act ("Payday Act") by failing to pay him commissions he was owed. Espinoza contended he was entitled to a judgment of $12,445.97 for commissions due and unpaid for sales made during late July and August 2007.

Under the Payday Act, an employee may seek wages from an employer by pursuing either judicial action against the employer or seeking an administrative remedy as prescribed by the Act.

TEX. LAB. CODE ANN. § 61.051(a) (Vernon 2006) ("An employee who is not paid wages as prescribed by this chapter *may* file a wage claim with the commission.") (emphasis added); *Igal v. Brightstar Information Tech. Group, Inc.,* 250 S.W.3d 78, 82 (Tex. 2008) (providing that Act gives employee option of filing in court or with Texas Workforce Commission); *Hull v. Davis*, 211 S.W.3d 461, 464 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The objective of the Payday Act is to discourage employers from withholding wages from employees by providing employees an avenue to enforce wage claims. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 561 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Section 61.001(7) of the Texas Payday Law defines "wages" as including "compensation owed by an employer for . . . services rendered by an employee, whether computed on a time, task, piece, commission, or other basis." TEX. LABOR CODE ANN. § 61.001(7) (Vernon 2006).

In this case, Espinoza opted to pursue his claim for unpaid wages by filing a counterclaim against CTOP. *See* TEX. LAB.CODE § 61.051(a); *Hull,* 211 S.W.3d at 464; *Igal,* 250 S.W.3d at 82. Accordingly, we must determine whether Espinoza proved he was entitled to wages under the Texas Payday Act as a matter of law. *See* TEX. R. CIV. P. 166a(c).

Espinoza presented evidence that he worked for CTOP as a sales representative, selling orthopedic implants to surgeons and hospitals until his resignation on August 15, 2007. In his affidavit, Espinoza states that the last payment he received from CTOP was on August 15, 2007, for the gross amount of $12,999.30, and he believed CTOP still owed him $12,455.97 for sales made in late July and August 2007, taking into account a deduction of $485.30, which represents the amount he agrees he owes CTOP in repayment of a commission bonus pursuant to the Compensation Agreement. In addition to Espinoza's affidavit, the record reflects the parties entered into a

stipulation, wherein both parties agreed that the calculations included in Espinoza's motion for summary judgment, and which provide the basis for the motion for summary judgment "are accurate and are correctly based upon the commission records that are being withheld [by CTOP]."

Given the parties' stipulation as to the accuracy of Espinoza's calculations and CTOP's failure to challenge the amount of Espinoza's wage claim in its response, Espinoza's summary judgment evidence is sufficient to show as a matter of law that Espinoza was due $12,455.97 in wages on August 31, 2007, pursuant to his Compensation Agreement. *See New Boston General Hosp., Inc. v .Texas Workforce Com'n*, 47 S.W.3d 34, 38 (Tex. App.—Texarkana 2001, no pet.) (holding verified affidavits from employee and her employers as well as tape-recorded conversation between employee and employer regarding commission agreement constituted substantial evidence to sustain employee's wage claim); *Texas Workers' Comp. Ins. Fund v. Texas Employment Com'n*, 941 S.W.2d 331, 334 (Tex. App.—Corpus Christi 1997, no pet.) (providing employee's documentation of company's written agreement providing severance pay sustained her entitlement to severance pay pursuant to Payday Act).

Although CTOP did not challenge the amount of wages Espinoza claimed he was unpaid in its summary judgment response, CTOP did challenge whether Espinoza was entitled to payment of any wages. CTOP asserted Espinoza was not entitled to payment because he breached his fiduciary duty to CTOP.

Fee forfeiture is appropriate in cases where an employee breaches his fiduciary duty to his employer. *See Burrow v. Arce*, 997 S.W.2d 229, 239 (Tex. 1999) ("Texas courts of appeals, as well as courts in other jurisdictions and respected commentators, have also held that forfeiture is appropriate without regard to whether the breach of fiduciary duty resulted in damages."). *Kinzbach*

*Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 572, 160 S.W.2d 509, 513 (requiring employee-agent to forfeit secret commissions received from conflicting interest). According to the Restatement:

> An agent's breach of fiduciary duty is a basis on which the agent may be required to forfeit commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty. The availability of forfeiture is not limited to its use as a defense to an agent's claim for compensation.

RESTATEMENT (THIRD) OF AGENCY § 8.01, cmt. d.2.

CTOP presented evidence in its response that Espinoza disclosed confidential information to CTOP's competitor, Stryker. In his deposition, Tim Waldrop, a Stryker manager, testified Espinoza met with Stryker representatives several times in March of 2007. During these meetings, Espinoza discussed his salary and how much product he was selling for CTOP. He also disclosed customers with whom he interacted, and indicated these customers would come with him if he left CTOP. Waldrop and Bryan Books, a CTOP co-worker who also met with Stryker, further confirmed that Espinoza met with Stryker employees in April of 2007. At this meeting, Espinoza gave Stryker information that CTOP's customers preferred using a metal-on-metal hip product offered by CTOP, but was not currently offered by Stryker. Lastly, Ryan Velasquez, another CTOP employee, stated in his deposition that Espinoza called him on August 15, 2007, and said he was leaving CTOP and taking "all of his doctors" with him. Velasquez indicated Espinoza tried to convince Velasquez to leave as well.

Because a party's breach of fiduciary duty may forfeit that party's right to earned compensation, we hold CTOP raised a genuine issue of material fact with regard to whether Espinoza breached his fiduciary duty, and therefore whether Espinoza is entitled to compensation.

*See Burrow*, 997 S.W.2d at 239; *Kinzbach Tool Co.*, 160 S.W.2d at 514-15. Accordingly, the trial court erred in granting summary judgment on the compensation issue.

Given that we reverse the trial court's judgment on Espinoza's breach of contract claim against CTOP, there no longer exists a basis upon which we can sustain an award of attorney's fees.

## CONCLUSION

Based on the foregoing, we hold the trial court erred in granting partial summary judgment in favor of Espinoza and Stryker. The trial court also erred in awarding attorney's fees. Accordingly, we reverse the trial court's judgment and remand for further proceedings in accordance with this Court's opinion.

Marialyn Barnard, Justice