NO. 12-09-00225-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BRADY W. CHAMBERS AND                    §          APPEAL
FROM THE 188TH

EVELYN B. CHAMBERS,   

APPELLANTS

 

V.                                                                    §          JUDICIAL
DISTRICT COURT

 

HUNT PETROLEUM CORPORATION,   

APPELLEE                                                               §          GREGG
COUNTY, TEXAS 







OPINION

            This
is an appeal from a judgment granting specific performance to Hunt Petroleum
Corporation of an option to purchase, and awarding damages and attorney’s
fees.  In three issues, Brady W. Chambers and Evelyn Chambers contend that (1)
the option had expired because Hunt failed to timely tender the $100.00
purchase money, (2) Hunt was not entitled to enforce the option because it was in
default on the contract’s provisions, and (3) there was insufficient evidence
to support the award of damages.  We affirm the trial court’s order for
specific performance, reverse and render the award of damages, render judgment
awarding taxes paid by the Chamberses, and remand the cause for a
redetermination of attorney’s fees.

 

 

Background

            The parties’
predecessors in interest, Sonat Exploration Company and First Church of the
Nazarene, on August 7, 1992, entered into a lease with an option to purchase
involving 3.94 acres of a 7.94 acre tract in Longview, Gregg County, Texas. 
The term of the lease was fifteen years.  Sonat paid $39,300.00 at the
execution of the lease “as rent for the entire lease term.”  The lease required
Sonat to pay all ad valorem taxes and other costs during the term “as if it
were the fee simple owner,” and provided that the church would have no
ownership responsibilities.  The lease granted Sonat the exclusive option to
purchase the 3.94 acre tract “at any time prior to the end of the lease term.” 
The lease and the option were assignable.  The option agreement contained the
following provision:

 

                The option shall be exercisable by
giving written notice to the Lessor prior to the end of the lease and the
purchase shall be completed by conveyance of the property by General Warranty
Deed and payment of the purchase price within sixty (60) days from the delivery
of the notice of the intent to exercise the option.  The purchase price shall
be one hundred dollars ($100) to be paid in cash at closing.

 

 

            On
November 22, 2004, the Chamberses bought the 7.94 acre tract that was subject
to the lease for $50,000.00.  Shortly thereafter, the Chamberses received
notice from the City of Longview that excessive overgrowth on the tract was a
violation of the municipal code.  Brady Chambers contacted Hunt Petroleum Corporation,
the successor in interest to Sonat, to notify it of the problem and its responsibility
under the lease to clear the 3.94 acre tract to correct the code violations.

            In
May 2005, Hunt hired a contractor to clear and mow the 3.94 acres.  The contractor
“began clearing the approximately 8 acres, our half and as a favor to Mr.
Chambers, his half also.”  The cost for clearing and mowing the 7.94 acres was
$17,353.00.  The foreman’s memo noted that “there was a brush and dirt pile on
Mr. Chambers[’s] half of the property that was buried in a pit that we dug.  We
put the excess dirt in a low area on his side to help it from collecting
water.”  The foreman’s memo also stated that “[w]e thought it would be in our
best interest to help out Mr. Chambers by cleaning up his side.”  Hunt mowed
the entire tract in 2006 and 2007.  Only the $4,625.00 cost of the 2007 mowing
was charged to this tract.

            The
Chamberses paid $1,698.00 in taxes attributable to Hunt’s 3.94 acres.

            On
July 16, 2007, Brad Russell, district landman for Hunt, sent the Chamberses
formal notice of Hunt’s exercise of its option to purchase.  Russell stated in
the letter that Hunt would prepare a plat and general warranty deed for the
Chamberses’ review.  The Chamberses did not respond.  Russell sent another
letter to the Chamberses on September 8, 2007, once again informing them that
Hunt was exercising the option in the lease and enclosing a general warranty
deed.  Russell asked the Chamberses to review the deed and sign it.  In his
letter, Russell stated that he would call the Chamberses and fix a time to meet
with them to pay the $100.00 purchase price, pursuant to the lease terms.  The
Chamberses did not respond to this letter.   On September 20, 2007,
Russell sent a third letter to the Chamberses referring to the numerous
occasions that Hunt had attempted without success to communicate with them by
telephone despite Hunt’s leaving several messages for them on their voice
mail.  Another warranty deed was enclosed for the Chamberses to execute.  The
letter concluded by asking the Chamberses to call one of two numbers to
schedule a time to close.  The Chamberses did not respond to the third letter.

            On
October 8, 2007, Hunt received a letter from the Chamberses’ lawyer advising
Hunt it was in default under the lease, and, as a result, was now holding over.

            On
November 5, 2007, the Chamberses filed a suit to quiet title to the 3.94 acre
tract.  They sought a declaration that the option to purchase was invalid on
various grounds, and judgment awarding them the back taxes they had paid on the
property.

            Hunt
counterclaimed seeking a declaration that the option was valid and a decree
ordering its specific performance.  It also sought an award of 50.6% of the
land clearing and mowing costs under the theory of quantum meruit, and attorney’s
fees.

            The
trial court found that Hunt had properly and timely exercised its option.  The
trial court ordered the Chamberses to execute a warranty deed, and, upon its
delivery, that Hunt tender $100.00 to the Chamberses.  The court also awarded
Hunt $11,132.00 in damages (50.6% of the total clearing and mowing charges),
and $29,289.91 in attorney’s fees.

 

Did the Option Expire Because of Hunt’s
Failure to Tender

 the $100.00 Purchase Money?

            In
their first issue, the Chamberses contend that the option to purchase expired
because Hunt failed to meet its contractual obligation to tender the $100.00
purchase price within the sixty day period allowed for closing after its notice
of exercise of the option.  They maintain that there are no special
circumstances that serve to excuse Hunt from strict compliance with the
contract’s terms.  The Chamberses argue that there is no evidence, or
at least insufficient evidence, or findings to support the trial court’s
conclusion that they were solely to blame for the failure to close.

 

 

Standard
of Review

            In
an appeal from a bench trial, the trial court’s findings of fact have the same
force and effect as a jury verdict and are reviewable for legal and factual
sufficiency under the same standards that are applied to the review of a jury
verdict.  Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).

            When
reviewing a finding for legal sufficiency, we must credit evidence favorable to
the judgment if a reasonable fact finder could, disregard contrary evidence
unless a reasonable fact finder could not, and reverse the fact finder’s
determination only if the evidence presented in the trial court would not
enable a reasonable and fair minded fact finder to reach the judgment under
review.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005).  The court should sustain an appellant’s legal sufficiency challenges if
the record reveals (1) there is a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a mere scintilla; or (4) that the evidence
conclusively establishes the opposite of a vital fact.  Id.  More
than a scintilla of evidence exists if the evidence rises to a level that would
enable reasonable and fair minded people to differ in their conclusions.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

            When
considering a factual sufficiency challenge, we consider all of the evidence
and set aside the judgment only if it so contrary to the overwhelming weight of
the evidence that it is clearly wrong and unjust.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).

            We
review the trial court’s conclusions of law de novo.  State v. Heal,
917 S.W.2d 6, 9 (Tex. 1996).

Applicable
Law

            Strict
compliance with the provisions of an option contract is required.  See Jones
v. Gibbs, 133 Tex. 627, 639-40, 130 S.W.2d 265, 271 (Tex.
Comm’n App. 1939, opinion adopted).  Exercise of an option must be unqualified
and strictly in accordance with the terms of the agreement, unless equity
requires otherwise.  City of Brownsville v. Golden Spread Electric Coop.,
192 S.W.3d 876, 880 (Tex. App.–Dallas 2006, pet. denied).  

            However,
the failure of the optionee to comply strictly with the terms or conditions of
the option will be excused when the failure is brought about by the conduct of
the optionor.  Jones, 133 Tex. at 640, 130 S.W.2d
at 272.  “It is thoroughly settled that where a defendant has openly and
avowedly refused to perform his part of the contract or declared his intention
not to perform it, the plaintiff need not make tender of payment of the
consideration before bringing suit.”  Burford v. Pounders, 145
Tex. 460, 466, 199 S.W.2d 141, 144 (Tex. 1947); Rus-Ann. Dev., Inc. v.
ECGC, Inc., 222 S.W.3d 921, 927 (Tex. App.–Tyler 2007, no
pet.).  Formal tender is excused when tender “would be a useless and idle
ceremony.”  Burford, 145 Tex. at 467, 199 S.W.2d at
145.  A tender of consideration is excused where the optionor intentionally
avoids giving the purchaser an opportunity of making it.  81 C.J.S. Specific
Performance § 116 (1977).

Discussion

            The
trial court made the following findings of fact germane to this issue.

 

10.  On July 16, 2007, prior to the expiration of the
Lease with Option, Defendant gave Plaintiffs written notice of its election to
exercise the option to purchase the 3.94 acres.  Plaintiffs received this
notice on or about July 25, 2007, but made no response to it.

 

11.  Subsequent to July 25, 2007, Defendant made
several attempts to contact Plaintiffs, both in writing and by telephone, in
order to arrange a closing of the purchase of the 3.94 acres in accordance with
the terms of the Lease with Option, but Plaintiffs ignored all of [Defendant’s]
attempts to do so.

 

12.  Defendant was at all material times ready,
willing and able to close the purchase of the 3.94 acres pursuant to the terms
of the Lease with Option.

 

 

Based on these
findings, the trial court concluded that “the failure to close was solely the
fault of the [Chamberses].”

            The
Chamberses acknowledge that “[i]t is thoroughly settled that where a defendant
has openly and avowedly refused to perform his part of the contract or declared
his intention not to perform it, the plaintiff need not make tender of payment
of the consideration before bringing suit.”  See Burford, 145
Tex. at 466, 199 S.W.2d at 144; Rus-Ann Dev., 222 S.W.3d at 927. 
However, the Chamberses insist that their silence in response to Hunt’s
attempts to communicate with them did not amount to an open refusal to perform
the contract that might serve to excuse Hunt’s tender of the $100.00
consideration.  The lease agreement required payment of the $100.00
consideration within sixty days of the notice of the exercise of the option. 
The Chamberses argue that because Hunt did not timely pay the consideration,
its attempt to exercise the option was not “strictly in accordance with the
terms of the agreement” and therefore ineffective.  See Besteman
v. Pitcock, 272 S.W.3d 777, 784 (Tex. App.–Texarkana 2008, no pet.).

            We
disagree.  The trial court was justified in inferring that the Chamberses’
refusal to respond to Hunt’s repeated attempts to communicate with them during
the critical sixty day period for closing was calculated to defeat Hunt’s
exercise of its option.  Almost immediately after the expiration of the lease
and the sixty days provided for closing of Hunt’s exercise of its option, the
Chamberses did communicate with Hunt giving it formal notice to vacate the
premises.  In our view, the Chamberses’ conduct was tantamount to a refusal to
perform their part of the contract.  A tender of consideration is excused where
the optionor intentionally avoids giving the purchaser an opportunity of making
it.  See 81 C.J.S Specific Performance § 116.  A tender of
the nominal $100.00 consideration under these circumstances “would have been a
vain and useless thing.”  See Burford, 145 Tex. at 466, 199
S.W.2d at 144.

            Ample
evidence supports the trial court’s findings.  The findings support its
conclusion that the failure to close within sixty days following Hunt’s notice
was solely the fault of the Chamberses.  The Chamberses’ first issue is
overruled.

 

Is a Party in Default on Other Contract
Provisions

Entitled to Enforce an Option in that
Contract?

            Article
III of the lease required the lessee, Hunt, to pay “all ad valorem taxes during
the term of the lease” and to pay “all other costs associated with the property
as if it were the fee simple owner.”  In their second issue, the Chamberses
maintain that Hunt is not entitled to the equitable remedy of specific
performance of the option provided by Article V of the lease because it had
breached the agreement by failing to pay the taxes on the 3.94 acres, and by
allowing the tract to become overgrown in violation of the contract and the
Longview municipal code.  The question presented is whether Hunt’s breach of
the covenant to pay the taxes and other costs associated with the property excuses
the Chamberses’ performance of the contract’s option provision.

Applicable
Law

            “A
prerequisite to the remedy of excuse of performance is that the covenants in a
contract must be mutually dependent promises.”  Hanks v. GAB Bus. Servs.,
Inc., 644 S.W.2d 707, 708 (Tex. 1982).  “[W]hen a covenant goes only to
part of the consideration on both sides and a breach may be compensated for in
damages, it is to be regarded as an independent covenant, unless this is
contrary to the expressed intent of the parties.”  Id.  A
“condition precedent” in a contract is an event that must occur or an act that
must be performed before a right can accrue to enforce an obligation.”  Centex
Corp. v. Dalton, 840 S.W.2d 952, 956 (Tex. 1992).  Such terms as “if,”
“provided that,” “on condition that,” or some similar phrase of conditional
language are normally required to create a condition precedent.  Criswell
v. European Crossroads Shopping Ctr., 792 S.W.2d 945, 948 (Tex. 1990). 
Courts will not construe a contract provision as a condition precedent unless
they are compelled to do so by language that may be construed in no other way.  See
Reilly v. Ranger Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987). 
“If a contract contains a condition precedent, it must either have been met or
excused before the other party’s obligation can be enforced.”  Cal-Tex
Lumber Co. v. Owens Handle Co., 989 S.W.2d 802, 809 (Tex. App.–Tyler
1999, no pet.).

            “A
court may refuse to grant equitable relief [specific performance] to a [party] who
has been guilty of unlawful or inequitable conduct regarding the issue in
dispute.”  Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d
678, 683 (Tex. App.–Austin 1998, pet. denied).

Discussion

            We
conclude that the requirement found in Article III of the lease that the lessee
pay taxes and other ownership costs associated with the 3.94 acre tract is a
covenant independent of the option agreement found in Article V.  It is not a
dependent covenant or condition precedent whose nonperformance would render the
option agreement unenforceable by Hunt.

            A
breach by Hunt of its obligations under Article III is readily compensable by
damages.  The lease contains no language from which it may be even inferred
that the parties intended to condition the lessee’s enforcement of the option
agreement upon its payment of taxes and other costs associated with the
property.  An examination of the entire agreement reveals no relationship
between the taxes and other costs provision and the option provision.  There is
no conditional language indicating that the enforceability of the option is
dependent upon Hunt’s performance of its obligations under Article III.

            In Cook
v. Young, 269 S.W.2d 457 (Tex. Civ. App.–Fort Worth 1954, no writ), the
lessee sought specific performance of an option to purchase clause in the lease
agreement.  Id. at 458. The lessor argued that the grant of
summary judgment in the lessee’s favor was improper, because there was a fact
issue regarding whether the lessee had complied with a term of the lease
requiring that it pay all the utility bills for the leased property.  Id.
at 460.  The court of appeals held that compliance with the terms of the lease
was not a condition precedent to the lessee’s exercise of the option.  Id. 
The court stated that “[w]hile we find such a provision in the lease
contract, we do not find it in that part of the instrument containing the
option to purchase.  The option is unconditionally granted and there is no
requirement creating any condition precedent or otherwise limiting the right to
exercise the option.”  Id.

            In Giblin
v. Sudduth, 300 S.W.2d 330 (Tex. Civ. App.–Austin 1957, writ ref’d
n.r.e.), a contract for the sale of land also gave the buyer an option to buy
an adjoining tract.  The option provided as follows:

 

The seller agrees to give the purchaser an option on
the acre tract joining the property they are buying from the seller on the east;
this option will be for 5 years and the purchasers can take up their option at
any time within 5 years from date by paying the seller $1500.00 in cash. The
purchaser agrees to pay a yearly rental of $10.00.

 

 

Id.
at 332.  The court of appeals held that the purchaser’s failure to pay the rent
did not bar the purchaser’s exercise of the option.  “The option was not
conditioned upon the payment of the annual rental, the option was for five
years[,] and the purchasers were allowed to take up their option at any time
within five years by paying the seller $1500.00 in cash.”  Id.  

            In a
case cited by the Chamberses, Lazy M Ranch, Ltd. v. TXI Operations, LP,
the contract required TXI to pay Lazy M $2,000.00 for the right to conduct
subsurface tests for gravel on part of the Lazy M land – 1,669 acres
specifically described by metes and bounds.  Lazy M Ranch, 978
S.W.2d at 680.  For the same consideration, the contract gave TXI the option to
lease 300 acres out of the 1,669 acres to mine subsurface materials.  To
exercise the option, the contract required TXI (1) to give Lazy M written
notice of its decision to exercise the option within six months of the
execution of the contract and (2) tender $98,000.00 to Lazy M.  TXI attempted
to exercise the option by delivering written notice accompanied by a $98,000.00
bank check.  Lazy M returned the check with a letter explaining that it would
not lease the land, because TXI had breached the contract by entering on and
testing Lazy M’s land outside the 1,669 acres specified in the contract.  Id.
 The uncontradicted summary judgment evidence showed that, despite Lazy M’s
repeated objections, TXI intentionally persisted in coring and testing outside
of the area subject to the agreement.  In conducting these tests, TXI stole
valuable information about the subsurface potential of the ranch.  Id.
at 681.

            The
Austin Court of Appeals held that TXI’s conduct constituted a material breach
of an implied covenant not to explore outside the area agreed upon.  Id.
 Consistent with the other opinions cited, the court of appeals acknowledged
that having decided that TXI’s conduct was a material breach of an implied
covenant, it must determine whether the implied covenant was independent or
dependent.  Id.  A breach of an independent covenant would give the
nonbreaching party only a cause of action for damages resulting from the
breach.  Id.  The breach of a dependent covenant gives the
nonbreaching party the election to terminate the contract.  Id.  In
that event TXI would have forfeited its option.  “Forfeitures will be avoided
unless [the] contract language admits of no other construction or results in a
construction that is unreasonable, inequitable, or oppressive.”  Id.
(citing Reilly, 727 S.W.2d at 530).  The court considered several
factors in determining whether it would be inequitable and oppressive to
characterize a party’s nonperformance as merely a breach of an independent
covenant:  (1) the extent to which the nonbreaching party will be deprived of
the benefit it reasonably could have anticipated had the breach not occurred,
(2) the extent to which the injured party can be adequately compensated for the
part of the benefit lost, (3) the likelihood that the defaulting party will
cure its failure, and (4) the extent to which the conduct of the party failing
to perform comports with standards of good faith and fair dealing.  Id.
at 681-82 (citing Restatement of
Contracts (Second) § 241(a) (1981)); Hernandez v. Gulf Group
Lloyds, 875 S.W.2d 691, 693 (Tex. 1994)).

            The
Chamberses stress that Hunt was unaware of the option to purchase until they
informed Hunt that the 3.94 acres was overgrown and that the lease required
Hunt to maintain the tract in compliance with the municipal code.  The Chamberses
speculate that but for their notice, Hunt would have remained ignorant of their
option to purchase and probably would have failed to exercise it.  The Chamberses
paid the taxes on the entire tract.  They claim they bought the entire tract
without knowledge of the easement.  The equities, the Chamberses contend, favor
them and make it inequitable and oppressive to reward Hunt by enforcing the
option.

            We,
on the contrary, believe the equities weigh in Hunt’s favor.  The $100.00 to be
paid at closing was nominal in that it bore no relationship to the value of
property exchanged.  The real price paid for the tract upon the option’s
exercise was embraced within the $39,600.00 consideration already paid by the
lessee at the execution of the lease in 1992.  The lease was of record when the
Chamberses bought the property.  The Chamberses secured a title policy when
they bought the property in 2004.  The lease with option to purchase was
pointed out in the policy as an exception to coverage.  The Chamberses knew or
should have known of the option to purchase when they bought the property.

            Once
informed that the 3.94 acres was overgrown, Hunt responded immediately by
clearing the tract to cure the problem and comply with the contract and the
municipal code.  The Chamberses complain of Hunt’s failure to pay the ad
valorem taxes on the 3.94 acres from November of 2004 when they bought the 7.96
acres until the time of trial.  The Chamberses, as record owners, received the
tax notices for the entire tract.  They concede they never informed Hunt
regarding the taxes or asked it to pay its pro rata share.  Even if Hunt had
neglected to pay the taxes after being told what was due, the injured party
could have been adequately and easily compensated by damages.  Hunt’s conduct
deprived the Chamberses of no benefit it reasonably could have anticipated. 
Hunt’s conduct was fully consistent with standards of good faith and fair
dealing.

            We
have weighed the equities using the criteria set out in Lazy M. 
Fairness does not require that we regard the covenants breached by Hunt as
constructively dependent in order to avoid an inequitable or oppressive
result.  The covenants breached by Hunt were independent covenants whose
nonperformance will not excuse the nonbreaching party’s performance.  Hunt’s
predecessor had already paid all but $100.00 of the actual consideration for
the property.  Hunt was never informed of the amount of taxes due nor was it
asked to pay them.  A forfeiture of Hunt’s option because of its breach of an
independent covenant to pay those taxes would be genuinely inequitable and
oppressive.  The Chamberses’ second issue is overruled.

 

Is the Evidence Sufficient to Support the Award
of Damages for Clearing and Mowing?

            In
their third issue, the Chamberses contend that the evidence is legally and
factually insufficient to support the award to Hunt of $11,132.00 representing
50.6% of the clearing and mowing charges Hunt incurred on the entire tract.  The
Chamberses’ share of the 7.96 acres equals 50.6%.

            The foreman’s
memo showing the cost for clearing and mowing the entire tract stated “on
5-04-2005, M & J Construction began clearing approximately 8 acres (our
half and as a favor to Mr. Chambers, his half also. . . .”  The memo detailed
how Mr. Chambers had met with him and stated, “We thought it would be in our
best interest to help out Mr. Chambers by cleaning up his side.”

            Brady
Chambers testified that he walked around the tract with the foreman and the
contractor.  Chambers recalled that they told him that he was being so nice
that they would clean up the brush piles he had on his side.  He testified that
he had never asked Hunt to mow his property.  Chambers stated that, in fact, he
had already had his part of the tract mowed for $200.00.  In 2005, Hunt spent $17,353.28
on the property, but it charged only $4,625.00 to this property in 2007.  Hunt
never asked for payment for this work, the bulk of which was performed in May
2005, almost four years before trial in April 2009.  Hunt sought to recover
under the doctrine of quantum meruit.

Applicable
Law

            “To
recover under the doctrine of quantum meruit, a plaintiff must establish that:
(1) valuable services and/or materials were furnished, (2) to the party sought
to be charged, (3) which were accepted by the party sought to be charged, and
(4) under such circumstances as reasonably notified the recipient that the
plaintiff, in performing, expected to be paid by the recipient.”  Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). 
The measure of damages for a claim in quantum meruit is the reasonable value of
the work performed and the materials furnished.  M.J. Sheridan & Son Co.
v. Seminole Pipeline Co., 731 S.W.2d 620, 625 (Tex. App.–Houston [1st
Dist.] 1987, no writ).

Discussion

            Hunt
proved the expense it incurred in clearing and mowing the 7.96 acres by the
memos and invoices.  Hunt’s own evidence shows that the work on the Chamberses’
half was done “as a favor to Mr. Chambers.”  The same memo states, “We thought
it would be in our best interest to help out Mr. Chambers by cleaning up his
side.”

            This
is consistent with Chambers’s testimony that he was led to believe that Hunt
buried the brush piles on his part of the tract as a favor for his
cooperation.  Brad Russell, Hunt’s landman who testified to the clearing and
mowing costs, conceded that he had no reason to disbelieve Chambers’s
testimony.  Hunt, he told the court, had never previously asked the Chamberses
to pay any part of the clearing and mowing costs, although most of the work had
been done four years before.  

            The
party seeking to recover in quantum meruit must establish that the work done
was accepted by the party to be charged “under such circumstances as reasonably
notified the recipient that the plaintiff in performing expected to be paid by
the recipient.”  See Heldenfels Bros., Inc., 832
S.W.2d at 41.

            There
is an absolute absence of any evidence in this record indicating that Hunt
expected to be paid for the work done on the Chamberses’ part of the tract. 
The evidence, in fact, conclusively establishes the contrary.  The Chamberses’
third issue is sustained.

 

Conclusion 

            That
part of the judgment granting specific performance of the option to purchase the
3.94 acres is affirmed.  The award of damages to Hunt in the
amount of $9,433.61 ($11,132.00 clearing and mowing costs less $1,698.39 taxes
paid by Chambers attributable to the 3.94 acres) is reversed and
judgment rendered that Hunt take nothing on its claim for
clearing and mowing costs.  Judgment is rendered awarding the
Chambers $1,698.39 for taxes they paid on the 3.94 acres.  The award of
attorney’s fees to Hunt is reversed, and the cause is remanded
to the trial court for reconsideration of the amount of attorney’s fees.  

                                                                                                    
BILL BASS__    

                                                                                                            Justice

Opinion delivered August 25, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of
Appeals, sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)